UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at Pikeville)

| | | |
|---|---|---|
| MARION KILBURN, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 7:17-139-DCR-CJS |
| | ) | |
| v. | ) | |
| | ) | |
| AARON SMITH, Warden, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Respondent. | ) | |

**\* \* \*   \* \* \*   \* \* \*   \* \* \***

This matter is before the Court on Petition for Writ of Habeas Corpus of Marion Kilburn filed pursuant to 28 U.S.C. § 2254. (R. 1). Petitioner Kilburn asserts 13 claims in support of his Petition; the first 10 claims stem from disposition by the Kentucky Court of Appeals of Kilburn's claims of ineffective assistance of his trial counsel, Emma Jones. Kilburn further asserts that he is entitled to habeas relief because the Supreme Court of Kentucky erred in affirming, on direct appeal, the trial court's rulings (1) denying defense counsel's motion for change of venue, (2) refusing to strike two jurors for cause, and (3) rejecting Kilburn's argument regarding double jeopardy. (R. 1-2, at 2). Following adjudication of his post-conviction motions in the Kentucky state courts, Petitioner now seeks appointment of counsel and an evidentiary hearing before this Court "on all issues," requesting this Court order a writ of habeas corpus granting retrial and his immediate release, or a reduction in his "severely harsh" sentence from 24 years to a lesser sentence such as 10 years. (R. 1, at 15; R. 1-2, at 4-6).

Respondent Warden Aaron Smith timely filed a Response to Petitioner's § 2254 Petition. (R. 12). Respondent supplied 17 data disks containing un-transcribed state court video proceedings, as well as an appendix containing the relevant record of state court proceedings in

support of the parties' submissions.  (*See* R. 12-2; R. 12-3; R. 12-4; R. 14).  Though the Court granted Petitioner 30 days to file a Reply (*see* R. 13), Petitioner declined to take advantage of the opportunity.  Having all relevant documents before the Court, this matter is ripe for consideration and preparation of a Report and Recommendation pursuant to 28 U.S.C. § 636(b).

Careful examination of the state court record reveals Petitioner Kilburn has wholly failed to meet his burden to show that habeas relief is warranted, and the undersigned is satisfied that the case at bar does not present a circumstance where the state courts' rulings were so lacking in justification that habeas corpus relief is required to disturb the Commonwealth's sovereign power in order to "guard against extreme malfunctions in the state criminal justice system."  *See Harrington v. Richter*, 562 U.S. 86, 103 (2011).  Instead, as explained below, with respect to his 10 ineffective assistance of counsel ("IAC") claims, the Kentucky court reasonably applied *Strickland* in concluding that Petitioner Kilburn failed to make the requisite showing that Kilburn's trial counsel was constitutionally deficient or that, absent counsel's alleged errors, the result of the trial would have been different.  *See Strickland v. Washington*, 466 U.S. 668 (1984).  Nor does the record demonstrate that, on direct appeal, the Supreme Court of Kentucky in adjudicating the motion for change of venue, the motion to strike two jurors, or the issue of double jeopardy reached a decision that was either contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of facts in light of the evidence presented in the state court proceeding.  Accordingly, it will be **recommended** that Petitioner's § 2254 Petition (R. 1) be **denied.**

# I.    BACKGROUND

Petitioner's state criminal charges stemmed from an automobile collision that occurred on the evening of February 4, 2011.[1]  On that evening, Joey Conn and his six-year-old daughter, Olivia, were traveling northbound in his pick-up truck on Highway 23 in Floyd County, Kentucky. They were struck head-on by a vehicle traveling southbound in the northbound lane of the road, operated by Petitioner Marion Kilburn.  (R. 12-3, at 18).  Petitioner was estimated by law enforcement officers to be traveling between 72 to 86 miles per hour at the time of the collision. (*See* R. 12-4, at 7; R. 12-3, at 17).  Joey Conn's vehicle was traveling at approximately 31 miles per hour just prior to impact.  (R. 12-3, at 18).

After the motor vehicle collision, Kilburn was found slumped over the seat of his vehicle with a bleeding cut to the forehead.  (*See* R. 12-4, at 7-8).  As emergency responders opened the driver's side door, they noted a strong odor of alcohol, and several beer cans fell onto the roadway. Kilburn admitted that he had consumed 10-12 cans of beer previously that evening, and a partially consumed 24-pack of beer was found in the back seat of his vehicle.  (*Id.*; R. 12-3, at 19).  Kilburn was unable to say over what period of time he consumed the 10-12 cans.  (R. 12-3, at 19).  A blood test subsequently indicated that Kilburn's blood alcohol level was nearly three times the legal limit. (*See* R. 12-4, at 7-8).  Petitioner Kilburn's blood alcohol level was at approximately 0.22 grams per 100 milliliters of blood.  (R. 12-3, at 18).

---

[1] The factual background herein was substantially obtained from the recitation of the factual history by the Supreme Court of Kentucky on direct appeal.  (*See* R. 12-4, at 7).  Factual findings made by state courts are entitled to a presumption of correctness that may be rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct.").  Petitioner has not substantively disputed the Kentucky Supreme Court's factual findings.

The occupants of the vehicle struck by Kilburn sustained injuries as a result of the collision and were transported to a nearby hospital by ambulance. (*See* R. 12-4, at 7-8; R. 12-3, at 19). Joey Conn suffered several broken ribs as well as severe bruising and a knee injury from the accident. Conn's minor child, Olivia, sustained severe internal injuries and required extensive medical treatment. She suffered permanent damage to her bowels, as well as a broken back, and required administration of a feeding tube for approximately one month following her release from the hospital.

### A.    Underlying State Court Criminal Proceedings

#### 1.    Trial

On March 16, 2011, a grand jury returned an Indictment in the Circuit Court of Floyd County, Kentucky, alleging that on February 4, 2011, Petitioner Kilburn operated a motor vehicle under a suspended license, on the wrong side of the road, at a high rate of speed, and while under the influence of alcohol, causing serious physical injury to oncoming motorist Joey Conn as well as his passenger Olivia Conn. (R. 12-3, at 1). The Indictment alleged 10 counts. Count I of the Indictment first alleged that Kilburn was subject to a penalty enhancement as a Persistent Felony Offender ("PFO") in the First Degree (Count I) pursuant to Kentucky Revised Statute ("KRS") § 532.080. (R. 12-3, at 1). Counts II and III[2] charged Kilburn with First Degree Assault pursuant to KRS § 508.010 by "wantonly engag[ing] in conduct which created a grave risk of death to another, thereby causing serious physical injury" to Olivia Conn and Joey Conn, respectively, "when the defendant was driving under the influence on the wrong side of the highway and hit the

---

[2] Count III was subsequently amended, charging Kilburn with Fourth Degree Assault based upon the injury to driver Joey Conn. (*See* R. 12-3, at 11).

vehicle" driven by Joey Conn and in which Olivia Conn was a passenger "head on[.]"  (R. 12-3, at 1).

Next, Count IV charged Kilburn with "operating a motor vehicle while under the combined influence of alcohol and any other substance or combination of substances which impairs one's driving ability" pursuant to KRS § 189A.010(5)(B).  (*Id.*).  Similarly, Count V charged Kilburn with operating a motor vehicle with a license that had been suspended due to a previous instance of operating a motor vehicle under the influence of alcohol, second offense, pursuant to KRS § 189A.090(2)(B).  Kilburn was also charged with reckless driving pursuant to KRS § 189.290 (Count VI);  driving without proof of insurance pursuant to KRS § 304.39.080 (Count VII); possession of an open alcoholic beverage container pursuant to KRS § 189.530 (Count VIII); failure to wear a seatbelt pursuant to KRS § 189.125 (Count IX); and failure to illuminate head lamps pursuant to KRS § 189.030 (Count X).[3]  (*Id.*).  Defendant entered a plea of Not Guilty on all charges.  (*See* R. 12-3, at 3).

The case proceeded to a 3-day jury trial on May 29, 2012.  Kilburn did not testify during the guilt phase of the trial.  (R. 12-3, at 20).  The jury found Kilburn guilty of First Degree Assault (Count II), Fourth Degree Assault (Count III), Impaired Driving (Count IV), Operating on a Suspended License (Count V), and Operating without Insurance (Count VII).  (R. 12-3, at 20). The sentencing phase began the following day, and a first degree persistent felony offender ("PFO") instruction was read to the jury along with the sentencing instructions on the charges on which Kilburn was convicted.

---

[3] Four of the ten original counts alleged in the Indictment were dismissed prior to trial: the charges for reckless driving (Count VI) as well as the charges regarding the open container (Count VIII), seatbelt (Count IX), and head lamps (Count X).  (*See* R. 12-3, at 10).  The Commonwealth proceeded to trial on the six remaining counts: PFO (Count I); First Degree Assault (Count II); Fourth Degree Assault (Count III); Impaired Driving (Count IV); Operating on a Suspended License (Count V); and Operating without Insurance (Count VII).  (*See* R. 12-3, at 11).

5

Based upon the recommendation of the Floyd Circuit Court jury, Kilburn was sentenced to 10 years as to the charge of First Degree Assault (Count II); under the PFO enhancement (Count I), this sentence was enhanced to 23 years.[4] (R. 12-3, at 11). The Judgment ordered the sentences in four of the five remaining counts to run concurrently with this 23-year sentence: Kilburn was sentenced to 1 year on the Fourth Degree Assault conviction (Count III); 6 months on the Impaired Driving conviction (Count IV); and 90 days on the Operating without Insurance conviction (Count VII). (*Id.*). Finally, as to the conviction for Operating on a Suspended License (Count V), the trial court imposed a 1-year sentence and ordered that it run consecutive to the 23-year sentence imposed in Count I, for a total of 24 years of imprisonment. (*Id.*).

## 2. Direct Appeal

Following trial and sentencing on August 17, 2012, Kilburn, through appellate counsel, filed a direct appeal as of right pursuant to Section 110(2)(b) of the Kentucky Constitution. On appeal, the Supreme Court of Kentucky reversed Kilburn's conviction on the charge of operating a motor vehicle with no insurance (Count VII), but affirmed his other convictions as well as his 24-year sentence. (R. 12-4). *See also Kilburn v. Commonwealth*, 2012-SC-494, 2014 WL 1514622 (Ky. Apr. 17, 2014). Kilburn had alleged five claims of error on direct appeal, four of which are relevant to the § 2254 Petition before the Court.

### a. The trial court committed error when it denied Kilburn's motion for change of venue.

First, Kilburn claimed that the trial court erred by overruling his petition for change of venue filed on May 8, 2012 and renewed on May 29, 2012. (R. 12-3, at 17). Defense counsel had

---

[4] Petitioner Kilburn had two separate prior felony convictions for operating a motor vehicle while license revoked or suspended for DUI, entered on April 15, 2008, and on March 8, 2006. (R. 12-3, at 40). These prior convictions were used as the basis for Kilburn's first degree PFO conviction. (*Id.*).

argued that prior to trial, a number of local news sources reported injuries to the six-year-old passenger, Olivia Conn, and referred to Petitioner's past criminal history involving alcohol-related convictions; counsel also pointed out that the case was being discussed by the community both in a local church and on the website Topix, an Internet forum. (R. 12-3, at 23). The trial court denied the motion both initially and when it was renewed by defense counsel prior to trial.

On appeal, Kilburn's appellate counsel argued that "[e]xtensive and detailed pretrial publicity compromised Marion Kilburn's right to a fair, impartial and indifferent jury free from outside influences, guaranteed to him by the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment." (R. 12-3, at 24) (citing *Irvin v. Dowd*, 366 U.S. 717 (1961)). The appeal also argued that Section 11 of the Kentucky Constitution as well as KRS § 452.210 require courts "to grant a change of venue if the defendant cannot have a fair trial in the county where the prosecution is pending." (R. 12-3, at 24) (citing *Brewster v. Commonwealth*, 568 S.W.2d 232, 235 (Ky. 1978)).

The Supreme Court of Kentucky found that the trial court did not abuse its discretion in rejecting Kilburn's venue argument, because "the mere fact that jurors may have heard, talked or read about a case is not sufficient to sustain a motion for change of venue, absent a showing that there is a reasonable likelihood that the accounts or descriptions of the investigation and judicial proceedings have prejudiced the defendant." (R. 12-4, at 10-11) (citing *Brewster v. Commonwealth*, 568 S.W.2d 232, 235 (Ky. 1978)). Pointing to the trial court's examination of jurors during voir dire, the Supreme Court of Kentucky concluded that "knowledge about the case was not widespread throughout the community" and Kilburn "only presented evidence that the accident received media coverage, not that extreme prejudice existed in the community." (*Id.* at 10-12). Not only did Kilburn fail to show either that "a significant amount of the potential jury

pool" was aware of the facts of the case or that "any juror expressed an opinion as to his guilt before trial," but upon a review of the record the Supreme Court concluded that the evidence showed just the opposite. (*Id.* at 12). Moreover, the trial court ensured that the two jurors[5] who had heard of the case by reading newspaper coverage represented to the trial court that they were able to be fair and impartial and assess the case only on the evidence introduced at trial. (R. 12-4, at 11). Accordingly, the Supreme Court of Kentucky concluded that "[t]he totality of the circumstances does not show a reasonable likelihood" that prejudicial news prior to Kilburn's trial prevented a fair trial. (*Id.*) (citing *Sheppard v. Maxwell*, 384 U.S. 333, 363 (1966)).

### b.    The trial court committed error when it failed to strike two jurors for cause during voir dire.

Kilburn's second argument on appeal claimed that the trial court erred in denying trial counsel's motion to strike two jurors for cause, and subsequent motion to set aside the verdict and motion for a new trial based upon the same issue. Counsel argued that the trial court's errors denied Kilburn the right to an impartial jury protected by Section 11 of the Kentucky Constitution as well as the Sixth and Fourteenth Amendments to the United States Constitution. Because Kilburn was forced to exhaust his peremptory challenges to remove the two jurors, an additional juror, whom Kilburn alleged he would have excused, sat on the jury.

Kilburn contended that during voir dire, the trial court overruled defense counsel's motion to strike the two jurors for cause. Kilburn's position was that the jurors should be excused for cause because they each indicated they had read inadmissible evidence in the Floyd County Journal prior to the trial. (R. 12-3, at 18). During voir dire, a juror stated that she "read about [the accident] in the Floyd County Journal a couple of times." (R. 12-3, at 18, 27-28). The juror answered the

---

[5] A third juror stated that she attended church with Joey Conn and recalled the case being discussed at church; she was excused. (R. 12-4, at 11).

trial court's follow-up questions, confirming that she had not formed an opinion about the case and promising to disregard what she may have heard and base her decision on the evidence and the trial court's instructions. (*Id.*). Another juror stated that she read the Floyd County Journal article but could not remember the content; moreover, the juror responded to the trial court's questions affirming that she would disregard what she read in the paper and make her decision on the evidence presented at trial. (R. 12-3, at 31-32). The trial court overruled counsel's objection that the jurors should be stricken for cause on grounds that the Floyd County Journal characterized Kilburn as a "a habitual drunk" and "referred to his past DUI record." (R. 12-3, at 30).

On appeal, counsel argued that merely by reading the article, which contained "inadmissible and highly prejudicial information that called Mr. Kilburn a habitual drunk and referred to his past DUI record," the jurors should have been stricken for cause on grounds that they could not "conform [their] views to the requirements of the law and render a fair and impartial verdict." (R. 12-3, at 33). Counsel contended that any "gray area" as to a juror's impartiality should be resolved in favor of a defendant. (R. 12-3, at 34) (citing *Randolph v. Commonwealth*, 716 S.W.2d 253, 255 (Ky. 1986); *King v. Commonwealth*, 276 S.W.3d 270 (Ky. 2009)).

Finding that the trial court did not abuse its discretion in denying Kilburn's motions to strike for cause, the Supreme Court of Kentucky reasoned that each of the two jurors who identified hearing something about the case in the media prior to trial "was questioned about his or her exposure to the news article" by the trial court. (R. 12-4, at 14). The Supreme Court concluded that mere exposure to news media under the totality of the circumstances was insufficient to show that the jurors were unable to render a fair and impartial verdict on the evidence, as "[n]either juror had sufficient knowledge of the case to require disqualification . . . and both were unequivocal in their belief they could remain impartial." (*Id.* at 13-14) (citing *Foley v. Commonwealth*, 953

9

S.W.2d 924, 932 (Ky. 1997) (stating that jurors are not expected to "live in a vacuum" or "be totally ignorant of any case they may be called upon to decide")).

> c.    **The trial court's jury instructions violated Kilburn's right against being held in double jeopardy.**

Counsel's next argument on direct appeal asserted that the trial court committed error when it adopted jury instructions that supported multiple convictions for the same offense, in violation of the Double Jeopardy clause of the Fifth Amendment to the United States Constitution, as incorporated through the Fourteenth Amendment, as well as Section 13 of the Kentucky Constitution and KRS § 505.020. (R. 12-3, at 37). Counsel argued that once the jury found Kilburn guilty of operating a motor vehicle with an alcohol concentration of above 0.08 (Count IV), the format of the jury instructions then required the jury to also find Kilburn guilty under the charge of First Degree Assault (Count II), which requires a finding in part that Kilburn was "driving his vehicle under the influence[.]" (R. 12-3, at 37-38). Counsel argued that, because operating a motor vehicle with an alcohol concentration of above .08 is equivalent to a finding of driving a vehicle under the influence, Count IV was included in Count II and therefore the jury instructions "permitted the jury to find Kilburn guilty of the same act" in more than one instance. (R. 12-3, at 39).

The Supreme Court of Kentucky rejected Kilburn's argument on direct appeal. (R. 12-4, at 17) (citing *Blockburger v. United States*, 284 U.S. 299 (1932)). While the two charges arise from the same course of conduct, they each "require proof of an additional fact which the other does not." *Id.* The Kentucky Supreme Court pointed out that the First Degree Assault charge, unlike the DUI statute, "does not require proof that the defendant was intoxicated;" however, it "does require proof that the defendant caused serious physical injury either intentionally or wantonly." (R. 12-4, at 18) (citing KRS § 508.010). The Kentucky Supreme Court contrasted the

assault charge with the DUI statute, which "requires proof that the defendant was in physical control of a motor vehicle while intoxicated, but calls for no proof of injury to another." (R. 12-4, at 18). Accordingly, the Supreme Court concluded that "a defendant can be convicted of both first-degree assault and operating a motor vehicle with alcohol concentration over .08 and not run afoul of double jeopardy. (*Id.*) (citing *Justice v. Commonwealth*, 987 S.W.2d 306, 312 (Ky. 1998)).

> ### d.  The trial court's jury instructions violated Kilburn's right against double enhancement.

Kilburn's final relevant argument on direct appeal asserted that the trial court committed reversible error when it allowed the jury instructions to include an enhancement under a charged offense to be used again as the basis of a PFO enhancement. Kilburn had two separate prior felony convictions for operating a motor vehicle while license revoked or suspended for DUI entered on April 15, 2008 and on March 8, 2006. (R. 12-3, at 40). Counsel asserted that these prior convictions were used as a basis for Kilburn's first degree PFO conviction (Count I), and that the same felony convictions were also used to enhance Kilburn's charge of operating on a suspended license (Count V), second offense, a class D felony. (*See id.* at 40-42) (citing *Corman v. Commonwealth*, 908 S.W.2d 122, 123 (Ky. Ct. App. 1995) ("[W]hen a single prior felony is utilized to create an offense or enhance a punishment at the trial of the second crime, that same prior felony cannot be used at that trial to prosecute the defendant as a persistent felony offender")). Counsel further asserted that this constituted "a prejudicial double enhancement" in violation of Kilburn's right to equal protection under the 14th Amendment to the United States Constitution as well as the Kentucky Constitution.

The Supreme Court of Kentucky held that the trial court did not err, and that Kilburn's argument "misapplie[d] the concept of double enhancement." (R. 12-4, at 18-19) (citing *Dale v. Commonwealth*, 715 S.W.2d 227 (Ky. 1986)). The Kentucky Supreme Court explained that "[f]or

11

an impermissible double enhancement to occur, the same felony must be used to create or enhance the severity of a charge, and then used again to enhance the penalty of *the same* created or enhanced charge." (R. 12-4, at 20) (emphasis added).  While one of Kilburn's two previous convictions was used to enhance his operating on a suspended license charge to a second offense, and those same convictions were also used to establish Kilburn's status as a first-degree PFO, "his PFO status was not used to enhance the punishment for his operating on a suspended license charge a second time." (R. 12-4, at 19-20).  Rather, "[t]he jury instructions made clear that [the] PFO enhancement could only be applied to [Kilburn's] conviction for first-degree assault."  (R. 12-4, at 20).  As a result, "there were two independent enhancements, and not a double enhancement of the same charge." (*Id.*).

Upon conclusion of its review on direct appeal, the Supreme Court of Kentucky affirmed the judgment of the Floyd Circuit Court in all relevant respects.[6]  (R. 12-4, at 20).  Accordingly, Kilburn's 24-year sentence was affirmed on direct appeal.  Kilburn did not thereafter file a petition for certiorari in the United States Supreme Court.  (*See* R. 1, at 3).

B.     **Post-Conviction Proceedings**

1.     **State Collateral Proceedings**

On August 1, 2014, Petitioner Kilburn, acting *pro se*, filed a Motion to Vacate, Set Aside, or Correct Sentence seeking to collaterally attack his Floyd County, Kentucky Circuit Court conviction pursuant to Rule 11.42 of the Kentucky Rules of Criminal Procedure ("RCr").  (R. 12-

---

[6] The Supreme Court of Kentucky reversed the conviction for operating a motor vehicle without insurance; however, because the sentence for operating without insurance "was run concurrently with the felony sentences," the court concluded that "this reversal has no effect on Appellant's sentence."  (R. 12-4, at 20).

4, at 22).  Kilburn raised ten claims of ineffective assistance of counsel,[7] in which he argued he

would not have been found guilty at trial or would have received a lesser sentence if he had had

_____

[7] Kilburn raised the following ten claims of ineffective assistance of counsel in his RCr 11.42 motion:

1.      Defense trial counsel was grossly ineffective when counsel failed or refused to investigate the facts and case law and prepare a defense that the Movant was not totally at fault for the injuries Olivia Conn received in the car collision.

2.      Defense trial counsel was highly ineffective when counsel failed or refused to investigate the facts and prepare a defense that Joey Conn was required to have Olivia Conn in a crash resistan[t] car seat while Joey [Conn]'s truck was traveling on the highway; KRS 189.125(3).

3.      Defense trial counsel was grossly ineffective when counsel failed or refused to investigate and present a defense that the Movant had a head injury from the previous night and that head concussion caused the Movant to have black-outs.

4.      Defense counsel was highly ineffective when counsel failed or refused to investigate the facts and case law and obtain an expert to explain the Movant's previous head concussion caused the Movant to have black-outs that caused the Movant to lose control of his ambition to drive during one of these black-outs.

5.      Defense counsel was grossly ineffective when counsel failed or refused to investigate the facts and case law and preserve for direct appeal [that] the Movant's sentence was subject to double enhancement through the jury instructions when convictions used for his persistent felony offender charge were also used to enhance the charge of operating a motor vehicle while license is revoked or suspended for DUI.

6.      Defense counsel was highly ineffective when counsel failed or refused to investigate the facts and case law and preserve for direct appeal the Movant's convictions for assault in the first degree and operating a motor vehicle with alcohol concentration over 0.08 constituted double jeopardy.

7.      Defense counsel was highly ineffective when counsel failed or refused to investigate the facts and case laws[;] there was wide publicity about the Movant's criminal case and, the subject was even preached from the pulpits in several churches, to prejudice the public against the Movant even before the Movant appeared for his trial and counsel should have ask[ed] for a change of venue because of churches preaching sermons about the Movant's criminal case.

8.      Defense counsel was grossly ineffective when counsel failed or refused to investigate the facts the Movant had a mental disability based on the Movant['s] constant use of alcohol and the Movant could not be in control of his criminal[] liability that caused the accident because of the Movant's mental disability.

13

effective counsel.  Kilburn's RCr 11.42 motion sought an evidentiary hearing, an order appointing counsel, and an order vacating the judgment and setting aside his 24-year sentence.

Subsequently, on August 3, 2014, the Floyd Circuit Court appointed counsel for Kilburn, and held Petitioner's RCr 11.42 motion in abeyance pending a submission from counsel.  (*See* R. 12-4, at 40, 47).  On March 2, 2015, Kilburn's appointed counsel requested an evidentiary hearing and filed a Submission on Movant's Pro Se Motion to Vacate Pursuant to RCr 11.42 and Motion for an Evidentiary Hearing, a general legal brief on the legal standards of ineffective assistance of counsel.  (R. 12-4, at 25).

On June 24, 2015, the Floyd Circuit Court held an evidentiary hearing, wherein Kilburn was represented by appointed counsel.  (*See* R. 12-4, at 48).  Kilburn testified at the hearing, and also called his trial counsel, Attorney Emma Jones, to testify.  (*See* R. 12-4, at 59).  Kilburn's testimony at the evidentiary hearing focused primarily upon (1) trial counsel's failure to investigate or otherwise utilize the "blackout" theory at trial, and (2) counsel's failure to introduce evidence of the victims' negligence at trial.  First, Kilburn testified that he believed his trial counsel was ineffective for failing to investigate his claim that he had suffered a head injury on the previous day, causing a blackout which continued until after the accident.

Kilburn testified that the night before the subject accident, he was walking along a creek near a friend's house when he fell over a hill and hit the back of his head.  Upon falling, Kilburn

---

9.     Defense counsel was grossly ineffective when counsel did not have the Movant present at every critical stage of the Movant's court proceedings as required by RCr 8.28.

10.    Defense trial counsel was grossly ineffective when counsel failed or refused to investigate and interview alibi witnesses and present a valid defense [which] has caused the cumulative effect or errors that Movant was denied a fair criminal proceeding.

(R. 12-4, at 22-23).

"blacked out" and did not regain consciousness until he awoke in the hospital after the subject automobile collision. He testified that, as a result, he has no memory of subsequently getting into his vehicle, driving on the wrong side of the road, or colliding with the victims' vehicle. On cross-examination, Kilburn admitted that he fell and hit his head because he is an alcoholic and was under the influence of alcohol. Kilburn testified that he cannot remember ever disagreeing with trial counsel regarding use of this head injury evidence at trial. He admitted that Attorney Jones did explain to him that it would "not be a good thing" to present to the jury.

Next, Kilburn's testimony at the evidentiary hearing focused on the strategic decision of Attorney Jones not to introduce evidence of the victim Joey Conn's failure to use a car seat when traveling with his child. Kilburn testified that 6-year-old Olivia Conn was merely buckled into a regular seat belt, rather than a child restraint seat, at the time of the accident. Kilburn acknowledged that he caused the accident and that he did not dispute that Olivia Conn would still have sustained injuries in the collision if she had been buckled into a child restraint seat, but he believed that she "would not have been hurt as bad" and therefore he was "not the cause of the little girl getting hurt as bad as she did." On cross-examination, counsel for the Commonwealth asked Kilburn what facts he believed his trial counsel failed to investigate with respect to this issue. Kilburn testified that he never discussed the car seat issue with trial counsel; Kilburn claimed that Attorney Jones never told him that the "little girl" was not in the child restraint seat, and he did not discover that fact until he received subsequent post-conviction briefing from the Commonwealth.

As to his remaining claims, Kilburn did not offer substantive testimony. He stated that he cannot recall any disagreements with Attorney Jones regarding what he wanted counsel to raise at trial. With respect to his claim regarding double jeopardy, Kilburn merely testified that he did not

recall any conversations with his trial counsel regarding double jeopardy. With respect to his claim that he was not present at critical stages of the proceedings, Kilburn testified that he was not present at "all the pretrial conferences" but was unable to point to any specific instances. With respect to his claim that counsel was ineffective for failing to investigate alibi witnesses or present an alibi defense, Kilburn was unable to point to any specific alibi witnesses or theories; rather, when counsel asked on direct examination what Kilburn meant by raising the issue of alibi witnesses, Kilburn testified that the length of his sentence was too severe.

Finally, Kilburn testified that his overall reason for raising his RCr 11.42 motion was that he was "hoping to get some time off" of his sentence. He stated that he is sorry for what happened to Joey and Olivia Conn, that he regrets what happened and does deserve to "do time," but that he sees other defendants receive lesser sentences of 10-15 years "for killing people" and here neither victim died in the accident. He reiterated that a lesser sentence was appropriate because even though he was the cause of the accident, he was not the cause of the "little girl getting hurt as bad as she did" due to lack of a child restraint seat. Likewise, a lesser sentence was appropriate because he suffers from alcoholism and neither intended to cause the accident nor was aware of his actions due to his claimed blackout. Kilburn concluded by stating that he is aging and has serious health issues due to his alcoholism.

Kilburn's trial counsel, Emma Jones, then testified at the evidentiary hearing.[8] Jones testified that the facts of the case were clear and her trial strategy was to secure conviction on a lesser degree of assault that would permit 20% parole eligibility. She testified that "a 20-year sentence at 85% was a death sentence for [Kilburn]; if at 20% at least he had a chance at parole."

---

[8] Ms. Jones was sequestered from the courtroom during Petitioner Kilburn's testimony.

Attorney Jones also testified regarding the investigation of Kilburn's "blackout" defense. Jones testified that she hired an accident constructionist as well as a psychologist in preparation for trial, and that she discussed the "blackout" defense with Kilburn. Attorney Jones testified that the expert psychologist evaluated Kilburn; after discussing the findings with the psychologist, Jones concluded that the expert testimony of the psychologist was not helpful to the defense. As a result of her discussion with the expert psychologist, Attorney Jones decided not to use the expert at trial and not to rely on the blackout defense. Jones further testified that she was concerned introducing this subject would work against the defense's goals by opening the door for the prosecution to introduce evidence of Kilburn's extensive alcohol-related criminal history during the guilt phase of the trial. Attorney Jones further testified that she then talked to Kilburn regarding the psychologist's remarks and explained that she felt such a strategy would not be good, as well as why it would work against the defense's goals, and he agreed to follow her recommendation. Jones testified that, as a result of her strategy, Kilburn's alcoholism and extensive alcohol-related criminal history was not admitted during the guilt phase of trial and only came up during sentencing.

Next, Jones testified that she and Kilburn discussed whether to point out mitigating details such as the child restraint seat or the fact that Joey Conn could have braked earlier than he did, but concluded that would translate to the jury as shifting blame to the victims. Jones testified that Joey Conn was an effective, sympathetic witness, and she believed being kind and sympathetic to the victim was a helpful strategy and had a better impact on the jury than cross-examining Mr. Conn as to why he did not secure his daughter in a car seat. Attorney Jones further testified that being kind and sympathetic to the victim is a common defense strategy. Moreover, Jones testified that the child was six years old, which was "right on the edge" of whether a restraint was necessary.

She testified that her research indicated most people in the jury pool at the time did not use child restraints for a child of that age; using car seats at an older age is more widespread now, but at the time was not the practice of the local community.

As a result, Attorney Jones concluded this approach was too risky and that "blaming the victim" would cause a backlash against Kilburn. Instead, Jones discussed a strategy of mitigation with Kilburn. Kilburn testified during the sentencing phase and followed the defense strategy of showing remorse and stating that he had paid for past alcohol-related incidents by serving his terms of incarceration. Jones testified that Kilburn's show of remorse was impactful, but that ultimately her strategy did not win at trial. On cross-examination, when asked whether she would use the same strategy again, Attorney Jones testified that it is common for trial attorneys to second guess themselves. In response to a question from the Commonwealth's counsel on cross-examination, Attorney Jones acknowledged that her strategy resulted in a sentence of only four years over the minimum, rather than the statutory maximum of life in prison. She testified that if she had utilized the blackout defense or had highlighted the victims' negligence, she does not know if the outcome would have changed; Kilburn may have prevailed at trial, or may have received a life sentence.

Upon conclusion of the testimony, the Floyd Circuit Court found that Ms. Jones was effective, that she did what she could do with the case she had, and that Kilburn had failed to demonstrate how counsel's alleged errors "would have made a difference" at trial. Following the evidentiary hearing, the Floyd Circuit Court entered an Order overruling Kilburn's RCr 11.42 motion. (R. 12-4, at 34). Beginning with Kilburn's first and second IAC allegations, the trial court rejected Kilburn's argument that trial counsel was grossly ineffective for failing to investigate a defense that Kilburn was not totally at fault for the injuries of Olivia Conn. (R. 12-4, at 34). The trial court explained that "Defendant testified he never discussed the fact that Olivia Conn was not

18

in a child's restraint car seat [with counsel].  Trial counsel for Defendant . . . testified that the issue of whether to blame Joey Conn, father of Olivia was discussed and dismissed as a strategy that was dangerous to the Defendant."  (*Id.*).  The trial court concluded that "[t]his is not ineffective assistance and was not likely to change the result of the trial."  (*Id.*).

Next, moving to Kilburn's third and fourth contentions of IAC, the trial court rejected Kilburn's argument that trial counsel was grossly ineffective for failing to raise the defense that Kilburn had a head injury from the previous night that caused a "black-out" leading to the wreck and that the head injury eliminated his control over his wish to drive at the time of the accident. (R. 12-4, at 34-35).  The trial court found that the record indicated just the opposite, as "[i]n fact, trial counsel hired a psychologist to present a defense regarding the 'black-outs'" but that "[s]uch a defense would have highlighted Defendant's history of alcohol use, which would open the door for the Commonwealth to present Defendant's significant history of drinking-related charges."  (R. 12-4, at 35).  Based upon its assessment of the record, the trial court concluded that "[t]his is not ineffective assistance and was not likely to change the outcome of the trial."  (*Id.*).  The trial court further concluded that as to Kilburn's eighth allegation of IAC, "[t]he same holds true with the Defendant's claim that he had a mental disability."  (*Id.*).

The trial court next rejected Kilburn's fifth and sixth allegations of IAC, as to the issues of double enhancement and double jeopardy.  The trial court explained that Kilburn's allegations constitute "simply a misunderstanding of the law by the Defendant and does not constitute ineffective assistance of counsel . . . . [Kilburn] simply misunderstands."  (R. 12-4, at 35).  Next, the trial court addressed Defendant's seventh contention of IAC, that counsel allowed the trial to occur in a county where publicity regarding the case was prejudicial without an effort to move to another venue.  (R. 12-4, at 35).  The trial court concluded that to the contrary, "[i]n fact, counsel

19

made multiple efforts to move the case" to another venue. (*Id.*). Moving to Kilburn's ninth allegation of IAC, where Kilburn claims he was not informed about nor present for all critical events in the case, the trial court stated that Kilburn "could not identify one such instance." (*Id.*). Finally, as to the tenth allegation of IAC that trial counsel was ineffective for failing to investigate alibi witnesses, the trial court reasoned that "[t]here obviously is no alibi for Mr. Kilburn in this matter." (R. 12-4, at 35-36). The trial court concluded that "Kilburn received a very stiff sentence for causing severe injury to a young girl and her father. Counsel for Kilburn did what she could with the case she had to work with." (R. 12-4, at 36).

Kilburn then appealed, *pro se*, to the Kentucky Court of Appeals. (R. 12-4, at 37). Kilburn's appellate brief referenced the same ten bases alleged before the Floyd Circuit Court, and asserted an additional allegation of IAC that the trial court "failed to strike two jurors due to Counsel's lack of proper defense and argument[.]" (R. 12-4, at 43). Kilburn's brief, however, merely referenced the ten allegations and did not set forth any specific facts or argument as to their merit. The only issue substantively addressed in the appeal of the RCr 11.42 motion was counsel's failure to address Kilburn's claim of a head injury.

In support of his requests for relief to the Kentucky Court of Appeals, Kilburn argued that "the [i]ssues brought in Appellant's Motion to Vacate RCr 11.42 were not fully addressed and the major issue of which appellant has attempted to bring before the Courts the claim of a head injury has repeatedly been side-stepped by the attorneys and the Commonwealth." (R. 12-4, at 48). Kilburn asserted that "[t]his head injury was the main cause of the accident, and not just the alcohol. Professional assistance on head injuries was warranted and Counsel should have plied the Courts for expert advice on this issue." (R. 12-4, at 48). Kilburn also argued that the evidentiary hearing held by the trial court was inadequate, "as the Trial Court never actually

20

considered Appellant's issues and only made a cursory ruling on the merits[.]" (R. 12-4, at 47).

Kilburn characterized the evidentiary hearing as "only a means for the State to play on Appellant's

intelligence and lack of enough skills to speak before the courts. Appellant felt he was 'no more

than a field mouse being played with by cats,' as he could not speak for himself, and Counsel

provided no help other than to be present." (*Id.*). Kilburn argued that the Court of Appeals should

remand the case "for a fully-developed Evidentiary Hearing on all issues." (R. 12-4, at 49).

The Kentucky Court of Appeals ruled on Kilburn's appeal of the Floyd Circuit Court's

order denying his RCr 11.42 motion on July 21, 2017. (R. 12-4, at 68). Denying Kilburn's claim

for relief, the Kentucky Court of Appeals stated that "[a]fter a careful review of the record, we

affirm because Kilburn's claim that he received the ineffective assistance of counsel concerning

his head injury and blackout theory of defense lacks merit[.]" (R. 12-4, at 69). Furthermore, the

Kentucky Court of Appeals determined that the issue of the head injury Kilburn received the day

before the subject collision "is the only claim that Kilburn raised in his 11.42 motion that he also

raises on appeal. Because he has not brought his remaining RCr 11.42 claims on appeal, those

claims are waived, and we will not consider them." (R. 12-4, at 70).

The Kentucky Court of Appeals applied the two-prong *Strickland* standard in determining

whether Kilburn received ineffective assistance of counsel due to counsel's failure to pursue the

issue of Kilburn's head injury he received the day prior to the subject automobile collision. (*See*

R. 12-4, at 71) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Analyzing the witness

testimony at the evidentiary hearing before the Floyd Circuit Court, the Kentucky Court of Appeals

pointed to Kilburn's testimony that he informed his trial counsel that he wanted to use his head

injury as a defense, but that she informed him that it would not help him. (R. 12-4, at 71-72). The

Kentucky Court of Appeals further noted that Attorney Jones testified at the evidentiary hearing

21

that Kilburn had informed her of his alleged blackout, and that she accordingly hired a psychologist

as an expert witness to examine Kilburn, but the psychologist's expert opinion did not support

Kilburn's defense or the blackout theory.  (R. 12-4, at 72).  The Kentucky Court of Appeals

concluded that "[c]onsequently, contrary to Kilburn's allegations, counsel did investigate the use

of the head injury and blackout theory as a possible defense[.]"  (*Id.*).  Nonetheless, "Kilburn does

not show how the result of his trial would have been different if any other experts had been

consulted concerning his defense theory."  Applying the prejudice prong of the *Strickland* IAC

test, the Kentucky Court of Appeals concluded that "this ineffective assistance of counsel claim

lacks merit because this issue of the head injury and the blackout theory of defense has been

properly addressed and Kilburn cannot show that the result of his trial would have been otherwise

different."  (R. 12-4, at 72).  Kilburn did not seek to appeal the decision of the Kentucky Court of

Appeals to the Kentucky Supreme Court, but rather initiated the instant proceedings approximately

30 days after the July 21, 2017 decision of the Kentucky Court of Appeals.

## 2.    Federal Post-Conviction Proceedings

In the instant action, Petitioner Kilburn filed his federal Petition for a Writ of Habeas

Corpus pursuant to 28 U.S.C. § 2254 on August 24, 2017.  (R. 1).  Kilburn's Petition is

accompanied by a 12-page "Standard of Review" brief discussing the applicable law on § 2254

IAC claims, followed by a 6-page handwritten "Memorandum of Facts and Laws of the Case."

(R. 1-1; R. 1-2).  Construing Kilburn's pro se submissions broadly,[9] Kilburn reasserts by reference

---

[9] It is well-settled that, "however inartfully pleaded," allegations in a pro se complaint are held to
"less stringent standards than formal pleadings drafted by lawyers."  *Haines v. Kerner*, 404 U.S. 519, 520
(1972).  Likewise, the allegations of a pro se habeas petition, "though vague and conclusory, are entitled to
a liberal construction."  *Burris v. United States*, 430 F.2d 399, 403 (7th Cir. 1970), *cert denied*, 401 U.S.
921 (1971).  The appropriate liberal construction requires active interpretation in some cases to construe a
pro se petition "to encompass any allegation stating federal relief."  *Franklin v. Rose*, 765 F.2d 82, 84-85
(6th Cir. 1985) (citing *White v. Wyrick*, 530 F.2d 818, 819 (8th Cir. 1976)).

the same 10 claims of ineffective assistance of counsel raised in his August 1, 2014 RCr 11.42 motion filed with the Floyd Circuit Court. *See* section I.B.1, at n.7, *supra*; (R. 1-2, at 2; R. 12-4, at 22). Echoing his assertions on direct appeal, Kilburn also asserts that he is entitled to habeas relief because the Kentucky Supreme Court erred in affirming the trial court's rulings (1) denying defense counsel's motion for change of venue in violation of Due Process under the Sixth Amendment to the U.S. Constitution (R. 1, at 7), (2) denying defense counsel's motion to strike two jurors, and (3) rejecting Kilburn's argument regarding double jeopardy. (R. 1-2, at 2).

In support of his allegations, Kilburn returns to the subject of his alleged head injury previously raised in the Kentucky courts. Kilburn repeats that he "was a chronic alcoholic and suffered a mental disability from constant alcohol use." (R. 1, at 5). Additionally, he reiterates his allegation that he "suffered a concussion prior to the auto accident which caused black-outs." (*Id.*). In his supporting memorandum, Kilburn adds that he "was involved in an auto accident while he was intoxicated and which also had an impact due to [a] previous head injury – which caused black-outs, that along with several medications being mixed together – resulted in a head-on collision with the other vehicle." (R. 1-2, at 3). Kilburn resurrects here the argument alleged during his RCr 11.42 motion proceedings that trial counsel, Attorney Jones, "simply did not apply any defensive strategy or a defense with regards to the above." (R. 1-2, at 3). He asserts that trial counsel was "ineffective for not providing Petitioner a total defense based on his mental health status due to head injuries, but also counsel should have brought a defense that supported an expert witness and a full evaluation over a reasoning for the actual black outs." (R. 1-2, at 4-5).

Kilburn adds that he "is aware that the accident could have resulted in a tragedy had the victims lost their lives, and there is no excuse for Petitioner's actions to drink while he was medicated, as the mixture could have [taken] his life also." (R. 1-2, at 4). He states that he "only

seeks a fair trial or an opportunity to have all his issues viewed on the merits without bias[.]" (*Id.*). Finally, Kilburn echoes his testimony at the evidentiary hearing that he believes the sentence imposed is simply too harsh. (*Id.*).

Construing Kilburn's claims liberally, Kilburn's § 2254 Petition also asserts that his claims are not barred by procedural default because he "has not been provided a full, fair opportunity to be heard" and did not have the benefit of effective assistance of counsel at his initial-review collateral proceeding. (*See* R. 1-2, at 4) (citing *Martinez v. Ryan*, 566 U.S. 1 (2012); *Woolbright v. Crews*, 791 F.3d 628 (2015)). Although the Floyd Circuit Court appointed counsel for Kilburn in connection with his RCr 11.42 motion proceedings, Kilburn asserts that his "post-conviction counsel . . . dropped the ball by not furthering a fuller defensive argument on ineffective assistance at trial." (R. 1-2, at 5). Kilburn seeks appointment of counsel and an evidentiary hearing before this Court "on all issues," requesting relief of retrial and immediate release, or a reduction in his "severely harsh" sentence from 24 years to a lesser sentence such as 10 years. (R. 1, at 15; R. 1-2, at 4-6).

## II.    ANALYSIS

### A.    Governing Legal Standard

Review of a petition for habeas corpus filed by a person in state custody is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. The AEDPA provides that a person in custody pursuant to a state court judgment may not obtain a petition for a writ of habeas corpus from a federal court "with respect to any claim that was adjudicated on the merits in state court proceedings." 28 U.S.C. § 2254(d). The statute sets forth two exceptions. First, a writ may be issued upon a showing that adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

24

federal law, as determined by the Supreme Court of the United States." *Id.* § 2254(d)(1). Second, a writ may be issued upon a showing that adjudication of the claim "resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the state court proceeding." *Id.* § 2254(d)(2). Even under the exceptions, the petitioner carries the burden of proof, and "this is a difficult-to-meet, and highly deferential, standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal citations omitted). Section 2254 relief is grounded in the rule that federal habeas review exists to ensure that individuals are not unconstitutionally imprisoned; therefore, it is intended to cure only serious constitutional errors, not merely to correct errors of fact or relitigate state adjudications. *See Herrera v. Collins*, 506 U.S. 390, 401 (1993) ("Federal courts are not forums in which to relitigate state trials.").

The "contrary to" and "unreasonable application" clauses of the first exception under § 2254(d)(1) have "independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). First, "[a] state court's decision is contrary to clearly established law if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent." *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (internal citations omitted). *See also Williams v. Taylor*, 529 U.S. at 412-13 ("Under the 'contrary to' clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.").

A state court's decision involves an "unreasonable application" of federal law under the first § 2254(d)(1) exception "if the state court identifies the correct governing legal principal from [the Supreme] Court's decision but unreasonably applies that principal to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. Thus, under the AEDPA, the question for this Court is "not whether a federal court believes the state court's determination was incorrect but whether the determination was unreasonable—a substantially higher threshold." *Schriro v. Langrigan*, 550 U.S. 465, 473 (2007). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 102-03. Further, factual findings of the state court are presumed correct unless the petitioner presents clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1).

The AEDPA, however, "does not automatically govern" federal review of every one of Kilburn's habeas claims. *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007). Instead, the Sixth Circuit has clarified that the AEDPA standard of review "applies only to any claim that was adjudicated on the merits in state court proceedings" pursuant to 28 U.S.C. § 2254(d). *Id.* (citing *Danner v. Motley*, 448 F.3d 372, 376 (6th Cir. 2006)). Accordingly, the Sixth Circuit determined

that application of a de novo standard of review is appropriate where the state court did not rule on the merits of a petitioner's particular claim. *Nields*, 482 F.3d at 449-50.

### B.    Ineffective Assistance of Counsel

The first 10 of the 13 claims set forth in Petitioner Kilburn's § 2254 Petition challenge the Kentucky courts' rejection of Kilburn's argument that he was denied his Sixth Amendment right to the effective assistance of counsel. (*See* R. 1-2, at 2). Kilburn merely reasserts by reference the same ten claims of ineffective assistance of counsel raised in his August 1, 2014 RCr 11.42 motion filed with the Floyd Circuit Court. *See* section I.B.1, at n.7, *supra*; (R. 1-2, at 2; R. 12-4, at 22). Of the ten ineffective assistance of counsel claims Petitioner raises in his § 2254 Petition, seven are barred by procedural default, as Petitioner failed to properly raise them on appeal to the Kentucky Court of Appeals. Regardless, each ineffective assistance of counsel claim fails on the merits. Motions under 28 U.S.C. §§ 2254 and 2255 must not only "specify all the grounds for relief available to the moving party" but must also "state the facts supporting each ground." *Higgins v. United States*, 10-1316, 2015 WL 4601161, at *58 (W.D. Tenn. July 29, 2015) (citing Rule 26(b) Governing Section 2255 Proceedings for the United States District Courts). "Conclusory assertions are insufficient" to support a § 2254 action. *United States v. Kerr*, 03-72148, 2005 WL 1640343, at *2 (E.D. Mich. July 8, 2005). Without any specific facts or argument directed in support of his IAC claims, Kilburn's allegations are merely conclusory and should be dismissed.

### 1.    Procedural Default

All but three of Petitioner's ineffective assistance of counsel claims are procedurally defaulted. Procedural default occurs when a petitioner fails to follow a regularly-enforced state procedural rule, which serves as an adequate and independent ground to bar review of a federal

constitutional claim. *Hartman v. Bagley*, 492 F.3d 347, 357 (6th Cir. 2007); *Maupin v. Smith*, 78 F.2d 135, 138 (6th Cir. 1986). The four-part test set forth in *Maupin* to assess procedural default is as follows:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that petitioner failed to comply with the rule . . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction . . . . Third, the court must decide whether the state procedural ground is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim . . . . Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin*, 78 F.2d at 138.

Here, Petitioner filed an appeal of the trial court's denial of his RCr 11.42 motion, re-stating the ineffective assistance of counsel claims raised in his initial motion. (R. 12-4, at 43). However, he failed to brief the claims or develop the arguments in any way, with the exception of the claims surrounding counsel's failure to investigate and mount a defense based on his alleged head injury (claims three, four, and eight of Petitioner's § 2254 Motion).[10] (*See* R. 12-4, at 37-49) (listing the ten claims the RCr 11.42 motion "was filed based upon"). Consequently, the Kentucky Court of Appeals only addressed the claims related to Petitioner's alleged head injury, finding the other claims to have been waived. (R. 12-4, at 68-69).

---

[10] Petitioner's third claim asserts that counsel was ineffective for failing to "investigate and present a defense that the Movant had a head injury from the previous night and that head concussion caused the Movant to have black-outs." (R. 1-2, at 1; R. 12-4, at 22-23). The fourth claim similarly states that counsel failed to "investigate the facts and case law and obtain an expert to explain the Movant's previous head concussion caused the Movant to have black-outs that caused the Movant to lose control of his ambition to drive during one of these black-outs." *Id.* Petitioner's eighth claim asserts that counsel was ineffective for failing to investigate the possibility that "Movant had a mental disability based on the Movant's constant use of alcohol and the Movant could not be in control of his criminal liability that caused the accident because of the Movant's mental disability." *Id.*

In rejecting most of Petitioner's ineffective assistance of counsel claims as waived, the Kentucky Court of Appeals relied on the state rule "that, generally, appellate courts will decline to reach issues an appellant raised in a lower court but failed to brief on appeal." *Commonwealth v. Pollini*, 437 S.W.3d 144, 148 (Ky. 2014) (citing *Grange Mut. Ins. Co. v. Trude*, 11 S.W.3d 803, 815 (Ky. 2014); *Commonwealth v. Bivins*, 740 S.W.2d 954, 956 (Ky. 1987)); *see also Bell Helicopter Textron, Inc. v. Dobbs*, 2019 WL 994332, at *5 (Ky. Ct. App. Mar. 1, 2019) (denying claim on appeal for failure to provide adequate factual basis or legal analysis in support of the claim) (citing *Harris v. Commonwealth*, 384 S.W.3d 117, 131 (Ky. 2012) (rejecting claim for lack of supporting analysis based on Kentucky Rule of Civil Procedure 76.12(4)(c)(v) requiring that an Appellant's brief contain "[a]n 'ARGUMENT' conforming to the Statement of Points and Authorities, with ample supportive references to the record and citation of authority pertinent to each issue of law . . . .")). Thus, this state procedural rule, which is widely followed by Kentucky courts, constituted independent and adequate state grounds to bar federal habeas review. *See, e.g.*, *Marchbanks v. Jones*, 2009 WL 1874191, at *3-5 (W.D. Mich. June 26, 2009) (adopting magistrate judge's finding of procedural default where state court of appeals concluded petitioner had abandoned certain claims for failing to sufficiently develop legal argument).

A petitioner who had the opportunity to raise constitutional issues in a state postconviction proceeding but failed to do so has waived those claims for purposes of federal habeas corpus review unless he can demonstrate cause for the procedural default and actual prejudice from the alleged constitutional error. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see also Wallace v. Sexton*, 570 F. App'x 443, 452 (6th Cir. 2014) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (stating that a federal habeas court may only consider a procedurally barred claim on the merits in the context of an ineffective assistance of counsel claim if the petitioner establishes "cause and

29

prejudice" to excuse the default, or demonstrates that a constitutional violation resulted in the conviction of an individual who is "actually innocent.")); *Woolbright v. Crews*, 791 F.3d 628, 631 (6th Cir. 2015) ("If a petitioner's claims are procedurally defaulted, they may not be reviewed by a habeas court unless he can demonstrate "cause" and "prejudice").

In *Wallace*, the Sixth Circuit explained that the lack of post-conviction counsel during an initial-review collateral proceeding can constitute "cause"[11] for a petitioner's procedural default. *Wallace*, 570 F. App'x at 452-53 (citing *Martinez v. Ryan*, 566 U.S. 1, 14 (2012)).  *See also Woolbright*, 791 F.3d at 631 (stating that "cause" to excuse procedural default "can be established in situations where state law bars a petitioner's [IAC] claims on direct appeal and the petitioner did not have the benefit of effective assistance of counsel at his initial-review collateral proceeding").  The rationale for this exception is that initial review on collateral proceedings provides the first opportunity for the state court to consider a particular claim on the merits, because the claim could not have been raised on direct appeal.  *Wallace*, 570 F. App'x at 452-53. Due to this unique procedural posture, such initial review collateral proceedings "are in many ways the equivalent of a prisoner's direct appeal as to the [IAC] claim."  *Id.*

The U.S. Supreme Court extended this *Martinez* exception to instances where a state's procedural structure makes it "virtually impossible" for a defendant to meaningfully present an IAC claim on direct appeal, "even if there is no outright requirement that a defendant refrain from doing so."  *Wallace*, 570 F. App'x at 453 (citing *Trevino v. Thaler*, 569 U.S. 413, 417 (2013)). *See also Sutton v. Carpenter*, 745 F.3d 787, 795-96 (6th Cir. 2014) (finding exception when

---

[11] The second exception to a procedural bar, "actual innocence," is not implicated in the case at bar. To demonstrate actual innocence in these circumstances, Petitioner must come forward with "new reliable evidence" in light of which "no juror, acting reasonably, would have voted to find [the petitioner] guilty beyond a reasonable doubt."  *Schlup v. Delo*, 513 U.S. 298, 321-22 (1995).  Petitioner Kilburn does not contend that "actual innocence" is relevant here, and his claims fall short of this standard as a matter of law.

Tennessee's procedural framework directed defendants to file IAC claims in post-conviction proceedings rather than on direct appeal). The Sixth Circuit has recognized that the *Martinez-Trevino* exception to procedural default applies in the context of 28 U.S.C. § 2254 motions appealed from Kentucky state courts. *Woolbright*, 791 F.3d at 631. The scope of the exception, however, is narrow. The U.S. Supreme Court cautioned that the *Martinez-Trevino* exception "does not extend to attorney errors in any proceeding beyond the first occasion the state allows a prisoner to raise a claim of [IAC]." *Wallace*, 570 F. App'x at 453 (citing *Martinez*, 566 U.S. at 16). *See also West v. Carpenter*, 790 F.3d 693, 699 (6th Cir. 2015) (finding that "attorney error at state post-conviction appellate proceedings cannot excuse procedural default" under the *Wallace* exception).

Kilburn has not set forth any facts or arguments to demonstrate cause for the procedural default and actual prejudice from the alleged constitutional error. *See id.* Construing his § 2254 Petition broadly, Kilburn argues that any procedural default is cured under the *Martinez-Trevino* exception based on Petitioner's lack of counsel for the *pro se* filing of his initial RCr 11.42 motion and appeal of the Floyd Circuit Court's Order denying relief. (R. 1-2, at 5). The rationale of the *Martinez-Trevino* exception is not served here, however, as the allegations underlying Petitioner's instant claim were raised in his initial *pro se* RCr 11.42 motion, but were then not preserved in his appeal to the Kentucky Court of Appeals. (*See* Section I.B.1, *supra*). As set forth *supra*, the *Martinez-Trevino* exception to procedural default does not apply to lack of counsel at proceedings other than the initial collateral review proceeding, where Kilburn presented argument as well as testimony in support of his claims at an evidentiary hearing where he was represented by counsel. Because the *Martinez-Trevino* exception does not extend to appellate claims, Petitioner's argument fails to cure his procedural default. Accordingly, any claims that were raised in Petitioner's RCr

31

11.42 motion but were not appropriately maintained through the appeals process are procedurally defaulted.

### 2.    Petitioner's IAC claims fail on the merits.

Even if Kilburn had properly asserted specific grounds in support of his ten IAC claims, this Court may grant Petitioner Kilburn's § 2254 Petition pursuant to the AEDPA only if the decision of the Kentucky courts was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence.  28 U.S.C. § 2254(d).  The AEDPA requires that a federal court considering a habeas petition under § 2254 limit its analysis of a state court's application of federal law to the law as it was "clearly established" under U.S. Supreme Court precedent at the time of the state court decision.  *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004).  At all relevant times in the underlying state court proceedings, the U.S. Supreme Court's two-part *Strickland* test for determining ineffective assistance of counsel was well-known and governed the analysis of Petitioner Kilburn's claims.  *See Baze*, 371 F.3d at 320 (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

To prevail on an ineffective assistance of counsel claim under *Strickland*, a petitioner must show that (1) counsel's performance was constitutionally deficient, and (2) counsel's deficient performance so prejudiced the defense as to render the trial unfair and undermine confidence in the reliability of the outcome.  *Strickland*, 466 U.S. at 687-89.  A reviewing court's scrutiny of the first *Strickland* prong, counsel's performance, is highly deferential, consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id*. at 689.  To demonstrate deficient performance, a petitioner must show that his counsel's representation fell below an objective standard of reasonableness on the facts of the

particular case, viewed as of the time of counsel's conduct.  *Id*. at 688-89, 693-94.  "The [petitioner's] burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'"  *Richter*, 562 U.S. at 104 (*citing Strickland*, 366 U.S. at 687).  Notably, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id.*

To demonstrate prejudice, the second *Strickland* prong, petitioner must demonstrate that counsel's constitutionally deficient performance so prejudiced the defense that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  The U.S. Supreme Court clarified that a "reasonable probability" under this standard is "a probability sufficient to undermine confidence in the outcome."  *Strickland*, 366 U.S. at 694.  A finding that petitioner did not make a showing of prejudice under *Strickland* provides an adequate ground for a court to reject an IAC claim, even if the first prong, constitutionally deficient performance, is assumed.  *Id.* at 687.  As discussed below, the Kentucky courts reasonably applied *Strickland* to each of Petitioner Kilburn's claims of ineffective assistance of counsel, and, moreover, even under de novo review the Court finds that Kilburn's claims lack merit.

> a.  **The Kentucky trial court reasonably adjudicated Kilburn's claim that trial counsel was ineffective for failing to investigate or present a defense that Kilburn was not totally at fault for the injuries Olivia Conn received in the car collision due to the victim's failure to use a car seat**.

Kilburn's first and second claims in support of his § 2254 Petition assert that his trial counsel, Emma Jones, essentially should have introduced evidence of victim Joey Conn's

contributory negligence at trial. Kilburn first alleges that Attorney Jones was ineffective for failing to present argument or testimony at trial that Kilburn "was not totally at fault for the injuries Olivia Conn received in the car collision." (R. 1-2, at 1; R. 12-4, at 22). Specifically, the second IAC claim asserts that counsel was ineffective for failing to "prepare a defense that Joey Conn was required to have Olivia Conn in a crash resistant car seat while Joey's truck was traveling on the highway." (*Id.*).

Even if Kilburn's claim were not barred by procedural default, *see* section II.B.1, *supra*, habeas relief is nonetheless unwarranted under § 2254(d) because the Kentucky trial court did not act unreasonably in its application of federal law. The Floyd Circuit Court presented the final ruling on Kilburn's first claim, as the Kentucky Court of Appeals found that Kilburn waived this issue by failing to raise it on appeal of his RCr 11.42 motion. (*See* R. 12-4, at 70). Based upon the testimony of Attorney Emma Jones at the evidentiary hearing that "the issue of whether to blame Joey Conn, father of Olivia was discussed and dismissed as a strategy that was dangerous to the Defendant," the Floyd Circuit Court found that "[t]his is not ineffective assistance *and was not likely to change the result of the trial*." (R. 12-4, at 34) (emphasis added).

The pivotal question under AEDPA is not whether a federal court believes the state court's determination was incorrect, but whether that determination was unreasonable—a substantially higher threshold satisfied only when a state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Thurmond v. Carlton*, 489 F. App'x 834, 836 (6th Cir. 2012) (citing *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Harrington v. Richter*, 562 U.S. 86, 103 (2011)); *see also Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (stating that in order for a state court's application of law to rise to the level of objective unreasonableness, the state court's determination

34

must be more than merely erroneous or incorrect). Under AEDPA, "a state court must be granted

a deference and latitude that are not in operation in a case involving direct review under [the]

*Strickland*" standard itself. *Harrington*, 562 U.S. at 88. Thus, "even if this Court believe[s] that

a state court incorrectly applied federal law, [it] must refuse to issue the writ of habeas corpus if

[it] finds that the state court's decision was a reasonable one." *Villagarcia v. Warden*, 599 F.3d

529, 533 (6th Cir. 2010) (citing *Simpson v. Jones*, 238 F.3d 399, 405 (6th Cir. 2000)). *See also*

*Cristini v. McKee*, 526 F.3d 888, 897 (6th Cir. 2008) ("Even if a federal court could determine that

a state court incorrectly applied federal law, the court still could not grant relief unless it also finds

that the state court ruling was unreasonable."). Petitioner carries a heavy burden to establish that

the Kentucky courts' rulings were so lacking in justification that habeas corpus is required to

disturb the Commonwealth's sovereign power in order to "guard against extreme malfunctions in

the state criminal justice system." *See Harrington*, 562 U.S. at 103.

Here, the Court finds that Petitioner Kilburn has wholly failed to meet that burden. The

Court's review of the record demonstrates that the Kentucky court correctly identified *Strickland*

as the controlling legal authority for considering claims of ineffective assistance of counsel. In

rejecting Petitioner's first IAC claim upon a finding that counsel's alleged error "was not likely to

change the result of the trial" (*see* R. 12-4, at 34), the Floyd Circuit Court properly applied the

prejudice prong of the *Strickland* test that Kilburn failed to show "a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Strickland*, 466 U.S. at 694. Kilburn has wholly failed to offer any federal authority on point in

support of his IAC claim, nor has he offered any argument demonstrating that the standard applied

was so unreasonable, so lacking in justification, that it resulted in an "extreme malfunction in the

state criminal justice system" necessitating habeas corpus to disturb the Commonwealth's

sovereign power. Accordingly, Kilburn has failed to meet his burden to show that the Kentucky courts' adjudication of his first IAC claim was objectively unreasonable, and his request for relief should be denied.

Moreover, even if the Kentucky courts had failed to adjudicate Kilburn's IAC claim on the merits, the claim fails under do novo review by this Court. In § 2254 proceedings, claims that were not adjudicated on the merits in state court proceedings receive a de novo standard of review for questions of law, including mixed questions of law and fact. *Robinson v. Howes*, 663 F.3d 819, 823 (6th Cir. 2011). Even under a de novo standard of review, however, a state court's factual determinations are presumed correct and may be rebutted only by clear and convincing evidence. *Id.* at 825 (citing 28 U.S.C. § 2254(e)(1)). Likewise, "[e]ven under de novo review, the standard for judging counsel's representation is a most deferential one." *Robinson*, 663 F.3d 819, 825 (citing *Harrington*, 562 U.S. at 105).

Based upon review of the record, habeas relief is not merited in this case, even under a de novo standard of review, because Kilburn has failed to satisfy his burden to meet both prongs of the two-part IAC test set forth by the U.S. Supreme Court in *Strickland*. Nor has Petitioner demonstrated how an evidentiary hearing would enable him to meet this burden. First, Petitioner's § 2254 Petition wholly fails to allege, or cite to any authority demonstrating, that trial counsel's failure to introduce evidence of the victim's own contributory negligence was constitutionally deficient under the first prong of *Strickland*. The U.S. Supreme Court cautioned that in reviewing an IAC claim, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight[.]" *Strickland*, 466 U.S. at 689. Given the high level of deference that courts must afford a defense counsel's strategic choices, the Court concludes that

Kilburn has wholly failed to "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 694.

Conversely, the evidence on the record demonstrates that Attorney Jones's decision not to present evidence of victim Joey Conn's negligence was a calculated trial strategy. Jones testified at the evidentiary hearing that she and Kilburn discussed to what extent they should point out mitigating details such as the child restraint seat or the fact that Joey Conn could have braked earlier than he did; however, she cautioned Kilburn that this approach was too risky, as the jury could perceive this as an attempt to shift blame to the victims, potentially causing a backlash against Kilburn. Counsel's logic was based upon numerous factors, such as research that most people in the jury pool at the time did not use child restraints for children the age of victim Olivia Conn, as well as counsel's impression that Joey Conn was an effective, sympathetic witness. Counsel further testified that being kind and sympathetic to the victim is a common defense strategy.

Moreover, Kilburn cannot demonstrate constitutionally deficient performance, as his argument that he was not totally at fault for the injuries Olivia Conn sustained in the collision due to the negligence of Joey Conn in failing to use a car seat is not legally sound. First, Kilburn cannot demonstrate that evidence regarding Conn's failure to use a car seat would have been admissible. Furthermore, even if Mr. Conn had been negligent in failing to use a car seat to secure his child, Kilburn fails to demonstrate how this fact would absolve him of criminal liability under the circumstances. *See, e.g., People v. Clark*, 431 N.W.2d 88 (Mich. Ct. App. 1988) (holding that the failure to wear a seat belt is not so substantial an act by a victim as to constitute an intervening cause which absolves a defendant from criminal liability). Kilburn testified at the evidentiary hearing that he does not dispute he was the cause of the collision, as well as the cause of Olivia

Conn's severe injuries. That the serious physical injuries sustained by Olivia Conn may have been less severe had Mr. Conn used a car seat is irrelevant to this question of Kilburn's violation of criminal law. The Sixth Circuit has made clear that "there can be no constitutional deficiency" in failing to raise meritless arguments. *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999); *see also Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) (stating that counsel "[is] not required to make meritless arguments to avoid a charge of ineffective assistance of counsel); *see also Horn v. Lafler*, 10-680, 2014 WL 4983659, at *34 (W.D. Mich. Sept. 22, 2014) ("Substantial deference is given to counsel's decisions not to raise an argument."). Accordingly, Kilburn has failed to demonstrate that counsel was ineffective for strategically deciding not to introduce evidence of Joey Conn's negligence.

Similarly, as to the second prong of the *Strickland* standard—prejudice—Kilburn has neither pointed to anything in the record, nor provided illustrative case law, to demonstrate that had trial counsel employed his defense theory at trial, the result of the proceedings would have been different. There is nothing in the record to suggest that the trial court would have found evidence of Joey Conn's negligence admissible. Furthermore, at the evidentiary hearing, Attorney Jones testified that it is common for trial attorneys to second guess themselves, but she does not know if the outcome would have changed. She testified that defendant may have won, or may have received a life sentence. Kilburn has wholly failed to demonstrate that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In sum, upon de novo review of Petitioner's first and second IAC claims reveals that Petitioner Kilburn has failed to meet his burden to show either constitutionally deficient performance or prejudice under the two-part *Strickland* test, and Petitioner's first and second claims for relief should be denied.

> **b.**    **The Kentucky Court of Appeals reasonably adjudicated
> Kilburn's claims that he is not criminally responsible due to
> alcohol-related infirmities.**

Kilburn's third, fourth, and eighth IAC claims in support of his § 2254 Petition all dovetail

into an allegation that trial counsel was ineffective for failing to assert a defense at trial that Kilburn

is not culpable due to the mental or physical, alcohol-related infirmities from which he suffered at

the time of the subject accident.   Kilburn's third claim asserts that counsel was ineffective for

failing to "investigate and present a defense that the Movant had a head injury from the previous

night and that head concussion caused the Movant to have black-outs."   (R. 1-2, at 1; R. 12-4, at

22-23).   Similarly, his fourth claim asserts that counsel failed to "investigate the facts and case law

and obtain an expert to explain the Movant's previous head concussion caused the Movant to have

black-outs that caused the Movant to lose control of his ambition to drive during one of these

black-outs."   (*Id.*).   Finally, Kilburn's eighth claim asserts that counsel was ineffective for failing

to investigate the possibility that "Movant had a mental disability based on the Movant's constant

use of alcohol and the Movant could not be in control of his criminal liability that caused the

accident because of the Movant's mental disability."   (*Id.*).

Kilburn properly exhausted these claims, having raised them in his RCr 11.42 motion and

on appeal of the trial court's denial of his RCr 11.42 motion to the Kentucky Court of Appeals,

where he argued that his prior head injury was "the main cause of the accident," and that counsel

should have received expert advice on this issue.   (*See* R. 12-4, at 48).   The Kentucky Court of

Appeals found that "Kilburn's claim that he received ineffective assistance of counsel concerning

his head injury and blackout theory of defense lacks merit[.]"   (R. 12-4, at 68-69).   Citing

*Strickland*, 466 U.S. at 687, as well as trial counsel's testimony at the evidentiary hearing that she

did investigate the theory as a possible defense but rejected the theory when the expert's opinion

did not support the defense, the Kentucky Court of Appeals held that "Kilburn does not show how the result of his trial would have been different[.]"  (R. 12-4, at 71-72).

Under AEDPA, "a state court must be granted a deference and latitude that are not in operation in a case involving direct review under [the] *Strickland*" standard itself. *Harrington*, 562 U.S. at 88.  Thus, "even if this Court believe[s] that a state court incorrectly applied federal law, [it] must refuse to issue the writ of habeas corpus if [it] finds that the state court's decision was a reasonable one."  *Villagarcia v. Warden*, 599 F.3d 529, 533 (6th Cir. 2010) (citing *Simpson v. Jones*, 238 F.3d 399, 405 (6th Cir. 2000))*; see also Cristini v. McKee*, 526 F.3d 888, 897 (6th Cir. 2008) ("Even if a federal court could determine that a state court incorrectly applied federal law, the court still could not grant relief unless it also finds that the state court ruling was unreasonable.").  Petitioner carries a heavy burden to establish that the Kentucky court's ruling was  so lacking in justification that habeas corpus is required to disturb the Commonwealth's sovereign power in order to "guard against extreme malfunctions in the state criminal justice system." *See Harrington  v. Richter*, 562 U.S. 86, 103 (2011).

The Court finds that Petitioner Kilburn has failed to meet his burden.  The Court's review of the record demonstrates that the Kentucky Court of Appeals correctly identified *Strickland* as the controlling legal authority for considering claims of ineffective assistance of counsel.  Based upon Attorney Jones's testimony at the evidentiary hearing, it was reasonable for the Kentucky Court of Appeals to find that Kilburn had failed to meet the prejudice prong of the *Strickland* test requiring a showing that, absent counsel's alleged errors, the result of the trial would have been different.  *See Strickland v. Washington*, 466 U.S. 668 (1984). The Petitioner wholly fails to demonstrate that the standard applied was so unreasonable, so lacking in  justification, that  it resulted in an "extreme malfunction in the state criminal justice system" necessitating habeas

40

corpus to disturb the Commonwealth's sovereign power. Accordingly, Kilburn has failed to meet his burden to show that the Kentucky courts' adjudication of his third, fourth, and eighth IAC claims was objectively unreasonable, and his request for relief should be denied.

Kilburn's third, fourth, and eighth claims fail under de novo review as well. Based upon review of the record, habeas relief is not merited in this case, even under a de novo standard of review, because Kilburn has failed to satisfy his burden to meet both prongs of the two-part IAC test set forth by the U.S. Supreme Court in *Strickland*. Nor has Petitioner demonstrated how an evidentiary hearing would enable him to meet this burden. Kilburn cannot demonstrate that the performance of his trial counsel was constitutionally deficient under the first prong of *Strickland*. To demonstrate deficient performance, a petitioner must show that his counsel's representation fell below an objective standard of reasonableness on the facts of the particular case, viewed as of the time of counsel's conduct. *Strickland*, 466 U.S. at 688-89, 693-94.

Kilburn testified at the evidentiary hearing that he fell and hit the back of his head the day prior to the accident. Kilburn further testified that, upon falling, he "blacked out" and did not regain consciousness until he awoke in the hospital after the subject automobile collision. He testified that, as a result, he has no memory of subsequently getting into his vehicle, driving on the wrong side of the road, or colliding with the victims' vehicle. On cross-examination, Kilburn admitted that he fell and hit his head because he is an alcoholic and was under the influence of alcohol at the time he fell. He testified that he wanted to use these facts as some kind of defense at trial. Attorney Jones testified that she did retain an expert psychologist and investigated this defense; however, she testified that the testimony of the psychologist was not helpful to the defense. Kilburn testified that he cannot remember ever disagreeing with trial counsel regarding use of this "blackout" or head injury evidence at trial. He admitted that Attorney Jones did explain

to him that it would "not be a good thing" to present to the jury because it would allow the
Commonwealth to introduce evidence of Kilburn's extensive, alcohol-related criminal history.

Based upon its review of the record, Kilburn has wholly failed to demonstrate that Attorney
Jones's representation fell below an objective standard of reasonableness.  Under the totality of
the circumstances, it was not unreasonable for Attorney Jones to seek to avoid admission of
evidence related to Kilburn's extensive, alcohol-related criminal history during the guilt phase of
trial, particularly when counsel's discussion with the psychologist indicated that Kilburn's theory
would not help the defense.  The U.S. Supreme Court cautioned that in reviewing an IAC claim,
"[a] fair assessment of attorney performance requires that every effort be made to eliminate the
distorting effects of hindsight[.]"  *Strickland*, 466 U.S. at 689.  Given the high level of deference
that courts must afford a defense counsel's strategic choices, the Court concludes that Kilburn
has failed to "overcome the presumption that, under the circumstances, the challenged action might
be considered sound trial strategy."  *Id.* at 694.  The evidence on the record demonstrates that
Attorney Jones's decision not to present evidence of Kilburn's alcoholism was calculated trial
strategy.

Additionally, Kilburn's argument that he should be absolved of criminal responsibility, at
least in part, due to his alcohol-induced blackout and history of addiction to alcohol is not legally
sound under the circumstances.  *See McGuire v. Commonwealth*, 885 S.W.2d 931, 934 (Ky. 1994)
(finding that, while voluntary intoxication negates specific intent, "[v]oluntary intoxication does
not negate culpability for a crime requiring a culpable mental state of wantonness or
recklessness"); *cf. Nichols v. Commonwealth*, 142 S.W.3d 683, 690 (Ky. 2004) (finding that failure
to instruct on voluntary intoxication was harmless as to appellant's wanton murder conviction
when there was evidence of wanton conduct under the circumstances manifesting an extreme

indifference to human life).  The requisite elements for Kilburn's conviction for First Degree Assault required a showing of "circumstances manifesting extreme indifference to the value of human life [where] he wantonly engages in conduct which creates a grave risk of death to another and thereby causes serious physical injury to another person."  KRS § 508.010(1)(b).  Because the requisite culpable mental state is wantonness or recklessness under the statute and does not require a showing of specific intent, voluntary intoxication is not a defense.  Counsel is not required to raise meritless claims in order for her representation to be constitutionally sufficient, as the Sixth Circuit has made clear that "there can be no constitutional deficiency" in failing to raise meritless arguments.  *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999).  Accordingly, Kilburn cannot demonstrate that the performance of his trial counsel was constitutionally deficient under the first prong of *Strickland*, and his request for relief should be denied.

Similarly, as to the second prong of the *Strickland* standard—prejudice—Kilburn has neither pointed to anything in the record, nor provided illustrative case law, to demonstrate that had trial counsel employed his defense theory at trial, "the result of the proceeding would have been different" pursuant to the second prong of the *Strickland* test.  *Id.* at 694.  At the evidentiary hearing, Attorney Jones testified that it is common for trial attorneys to second guess themselves, but she does not know if the outcome would have changed.  She testified that defendant may have won, or may have received a life sentence.  There is absolutely no support in the record indicating that use of the defense would have been admissible at trial, would have absolved Kilburn of criminal responsibility, or would have resulted in a lesser sentence.

Furthermore, Kilburn's IAC claims on these grounds constitute thinly-veiled attempts to challenge what he views to be an unfair sentence.  Kilburn's real complaint in this action is the length of his sentence.  At the evidentiary hearing, Kilburn testified that his addiction to alcohol

43

should have been taken into consideration.  He testified that he did cause the accident, he is sorry for what happened to Joey and Olivia Conn, and that he does deserve to "do time."  However, Kilburn testified that he should have received a lesser sentence because he sees other defendants receive lesser sentences of 10-15 years "for killing people," and here neither victim died in the accident.  Likewise, a lesser sentence was appropriate in his mind because he suffers from alcoholism and neither intended to cause the accident nor was aware of his actions due to his claimed blackout.

The federal courts are not in a position to make a value judgment regarding Kilburn's disagreement with the sentence he received.  Section 2254 relief is grounded in the rule that federal habeas review exists to ensure that individuals are not unconstitutionally imprisoned; therefore, it is intended to cure only serious constitutional errors, not merely to correct errors of fact or relitigate state adjudications.  *See Herrera v. Collins*, 506 U.S. 390, 401 (1993) ("Federal courts are not forums in which to relitigate state trials.").  The states possess primary authority for defining and enforcing criminal law.  *Engle v. Isaac*, 456 U.S. 107 (1982).  Without any evidence or jurisprudential support to demonstrate that the Kentucky court sentenced Kilburn in violation of his constitutional rights, Kilburn is not entitled to habeas relief, and his request for relief should be denied.

          **c.**      **The Kentucky trial court reasonably adjudicated Kilburn's claim that his counsel was ineffective for failing to preserve the issues of double jeopardy and double enhancement for direct appeal.**

Petitioner's fifth and sixth IAC claims allege that Kilburn's trial counsel was ineffective for failing to preserve two issues for direct appeal.  Kilburn asserts that his trial counsel was ineffective for failing to "preserve for direct appeal [that] the Movant's sentence was subject to double enhancement through the jury instructions when convictions used for his persistent felony

44

offender charge were also used to enhance the charge of operating a motor vehicle while license is revoked or suspended for DUI." Similarly, Kilburn asserts that his trial counsel was ineffective for failing to "preserve for direct appeal the Movant's convictions for [both] assault in the first degree and operating a motor vehicle with alcohol concentration over 0.08 constituted double jeopardy." Kilburn's claims are barred by procedural default, as Kilburn failed to properly raise them in the appeal of his RCr 11.42 motion to the Kentucky Court of Appeals. *See* section II.B.1, *supra*. If Kilburn's claims were not barred by procedural default, habeas relief is nonetheless unwarranted under § 2254(d) because the Floyd Circuit Court did not apply federal law unreasonably.

The Floyd Circuit Court presented the final ruling on Kilburn's claims, as the Kentucky Court of Appeals found that Kilburn failed to appropriately raise these issues on appeal of his RCr 11.42 Motion. (*See* R. 12-4, at 70). Following the evidentiary hearing on Kilburn's RCr 11.42 motion, the Floyd Circuit Court found that Kilburn's claims were meritless, as "[t]his is simply a misunderstanding of the law by [Kilburn] and does not constitute ineffective assistance of counsel. . . . He simply misunderstands." (R. 12-4, at 35). Kilburn has wholly failed to offer any federal authority on point in support of his IAC claims. Nor has Kilburn set forth any argument demonstrating that the standard applied by the Kentucky court was so unreasonable, so lacking in justification, that it resulted in an "extreme malfunction in the state criminal justice system" necessitating habeas corpus to disturb the Commonwealth's sovereign power. Accordingly, Kilburn has failed to meet his burden to show that the Kentucky courts' adjudication of this IAC claim was objectively unreasonable, and his request for relief should be denied.

Moreover, based upon review of the record, habeas relief is not merited in this case, even under a de novo standard of review, because Kilburn has failed to satisfy his burden to meet both

prongs of the two-part IAC test set forth by the U.S. Supreme Court in *Strickland*. Nor has Petitioner demonstrated how an evidentiary hearing would enable him to meet this burden. The record reflects that trial counsel did not preserve these issues for appeal. (*See* R. 12-4, at 17). Nonetheless, Kilburn has failed to meet the two-part test for IAC under *Strickland*, as he cannot show that his trial counsel's performance in failing to preserve these issues was constitutionally deficient.

As to the double jeopardy claim, Kilburn cannot point to any jurisprudential authority to support his argument that he was subject to double jeopardy under the circumstances at hand. Rather, as the Supreme Court of Kentucky pointed out on direct appeal, "[d]ouble jeopardy does not occur when a person is charged with two crimes arising from the same course of conduct, as long as each statute 'requires proof of an additional fact which the other does not.'" (R. 12-4, at 17) (citing *Commonwealth v. Burge*, 947 S.W.2d 805, 809 (Ky. 1996); *Blockburger v. United States*, 284 U.S. 299 (1932)). The crimes of assault in the first degree and operating a motor vehicle with alcohol concentration over 0.08 each require proof of separate elements in compliance with the test set forth by the U.S. Supreme Court in *Blockburger*. *See* Section II.C., *infra*.

Likewise, as to the double enhancement claim, Kilburn's legal theory is unsound. (*See* R. 12-4, at 18-19) ("[W]hile it is true that these offenses were used as the basis of Kilburn's first-degree PFO status and to elevate his operating on a suspended license charge to a second offense, this is not the type of impermissible double enhancement contemplated by previous decisions of this Court."). Accordingly, Kilburn's assertions that he was subject to double jeopardy and impermissible double enhancement are meritless. Counsel is not required to raise meritless claims in order for her representation to be constitutionally sufficient, as the Sixth Circuit has made clear

that "there can be no constitutional deficiency" in failing to raise meritless arguments. *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999).  *See* Section II.C., *infra*.

Furthermore, Kilburn's IAC claims based upon double jeopardy and double enhancement constitute thinly-veiled attempts to relitigate arguments that have already been rejected on direct appeal. (*See* R. 12-4, at 17).  It is improper for Kilburn to appeal an underlying claim of error in a § 2254 proceeding, "in the guise of ineffective assistance of counsel, to relitigate issues decided adversely to him." *Clemons v. United States*, 1-496, 2005 WL 2416995, at *2 (E.D. Tenn. Sept. 30, 2005); *Echeverria-Ruiz v. United States*, 3:09-179, 2017 WL 1505121, at *11 (W.D. Ky. Feb. 14, 2017).  Such allegations are insufficient to satisfy the prejudice prong of *Strickland.* Accordingly, Kilburn's request for relief should be denied.

> ### d.  The Kentucky trial court reasonably adjudicated Kilburn's claim that trial counsel was ineffective for failing to move for a change of venue.

Petitioner's seventh IAC claim alleges that Kilburn's trial counsel was ineffective for failing to investigate the "wide publicity about the Movant's criminal case" and failing to "ask for a change of venue because of churches preaching sermons about the Movant's criminal case." Kilburn's claim is barred by procedural default.  *See* section II.B.1, *supra*.  If Kilburn's claim were not barred by procedural default, habeas relief is nonetheless unwarranted under § 2254(d) because the Kentucky trial court did not apply federal law unreasonably.

The Floyd Circuit Court presented the final ruling on Kilburn's claim, as the Kentucky Court of Appeals found that Kilburn failed to appropriately raise this issue on appeal of his RCr 11.42 motion.  (*See* R. 12-4, at 70).  Following the evidentiary hearing on Kilburn's RCr 11.42 motion, the Floyd Circuit Court found that Kilburn's claim was meritless, as "[i]n fact, counsel made multiple efforts to move the case."  The Court's review of the record demonstrates that the

Kentucky court did not unreasonably apply federal law in rejecting Kilburn's claim, as counsel did seek a change of venue based upon the publicity surrounding Kilburn's criminal action. (*See* 12-4, at 9). Kilburn simply has failed to demonstrate how the Kentucky court's adjudication involved an unreasonable application of the two-part *Strickland* test for IAC claims.

Moreover, based upon review of the record, habeas relief is not merited in this case, even under a de novo standard of review, because Kilburn has failed to satisfy his burden to meet both prongs of the two-part IAC test set forth by the U.S. Supreme Court in *Strickland*. Nor has Petitioner demonstrated how an evidentiary hearing would enable him to meet this burden. Kilburn cannot demonstrate that the performance of his trial counsel was constitutionally deficient under the first prong of *Strickland*, because counsel did move for a change of venue on the very basis suggested in Kilburn's allegation. (*See* R. 12-4, at 9). This fact is supported not only on the record, as the Floyd Circuit Court found, but also evidenced by Kilburn's own § 2254 Petition; aside from the IAC claims, his next basis for habeas relief is that the Kentucky courts erred in denying his motion for change of venue. (*See* R. 1-2, at 2) ("Mr. Kilburn now brings this petition for a writ of habeas corpus on the grounds of . . . denial of change of venue by the trial court").

Kilburn's real complaint is that the motion did not ultimately prevail; this does not amount to ineffective assistance of counsel. The fact that counsel did not ultimately prevail on those arguments does not meet the highly deferential standard under the first prong of *Strickland*. A defendant's right to counsel under the Sixth Amendment does not mean that a defendant is guaranteed an ultimately victorious result. Rather, this constitutional protection guards against representation that "so undermine[s] the proper function of the adversarial process that the [proceedings] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686; *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) ("The Sixth Amendment guarantees reasonable

48

competence, not perfect advocacy judged with the benefit of hindsight.").  Nor may Kilburn use

an IAC claim to relitigate issues already decided on direct appeal; it is improper for Kilburn to

appeal an underlying claim of error in a § 2254 proceeding, "in the guise of ineffective assistance

of counsel, to relitigate issues decided  adversely to him." *Clemons v. United States*, 1-496, 2005

WL 2416995, at *2 (E.D. Tenn. Sept.  30, 2005); *Echeverria-Ruiz*, 2017 WL 1505121, at *11.  Such

allegations are insufficient to satisfy the prejudice prong of *Strickland.*

> **e.      The Kentucky trial court reasonably adjudicated Kilburn's claim that trial counsel was ineffective for failing to ensure Kilburn's presence during critical stages of proceedings in the underlying criminal action.**

Petitioner's ninth IAC claim alleges that defense counsel was ineffective for failing to

secure Kilburn's presence "at every critical stage of the Movant's court proceedings[.]"  (R. 1-2,

at 1; R. 12-4, at 23).  Kilburn's claim is barred by procedural default.  *See* section II.B.1, *supra*.  If

Kilburn's claim were not barred by procedural default, habeas relief is nonetheless unwarranted

under § 2254(d) because the Kentucky court did not unreasonably apply federal law.  The Floyd

Circuit Court presented the final ruling on Kilburn's claim.  (*See* R. 12-4, at 70).  Following the

evidentiary hearing on Kilburn's RCr 11.42 motion, the Floyd Circuit Court found that Kilburn's

claim was meritless, as he "could not identify one such instance."  (R. 12-4, at 35).  The Court's

review of the record demonstrates that the Kentucky court did not unreasonably apply federal law

in rejecting Kilburn's claim.  At the evidentiary hearing, Kilburn testified that he was not present

at "all the pretrial conferences" but was unable to point to any specific instance.  Appointed counsel

at the hearing clarified that the record did not reflect Kilburn's absence at any such proceeding.

Moreover, based upon review of the record, habeas relief is not merited in this case, even

under a de novo standard of review, because Kilburn has failed to satisfy his burden to meet both

prongs of the two-part IAC test set forth by the U.S. Supreme Court in *Strickland*.  Nor has

Petitioner demonstrated how an evidentiary hearing would enable him to meet this burden. Petitioner's § 2254 Petition wholly fails to demonstrate that he was not present at any specific proceeding. Nor does the record reflect any such absence. Without any evidentiary support or specific argument, Kilburn's claims are wholly meritless. In sum, upon de novo review of Petitioner's IAC claim, the Court finds that Petitioner Kilburn has failed to meet his burden to show either constitutionally deficient performance or prejudice under the two-part *Strickland* test, and the undersigned recommends that Petitioner's claim for relief be denied.

> **f.** **The Kentucky trial court reasonably adjudicated Kilburn's claim that trial counsel was ineffective for failing to investigate alibi witnesses.**

Petitioner's final IAC claim alleges that his trial counsel was ineffective for failing "to investigate and interview alibi witnesses and present a valid defense" which he alleges "has caused the cumulative effect or errors that Movant was denied a fair criminal proceeding." (R. 1-2, at 1; R. 12-4, at 23). First, Kilburn's claim is barred by procedural default. *See* section II.B.1, *supra*. If Kilburn's claim were not barred by procedural default, habeas relief is nonetheless unwarranted under § 2254(d), as Petitioner cannot show that the Kentucky trial court applied federal law unreasonably. The Floyd Circuit Court presented the final ruling on Kilburn's claim. (*See* R. 12-4, at 70). Following the evidentiary hearing on Kilburn's RCr 11.42 motion, the Floyd Circuit Court found that "[t]here obviously is no alibi for Mr. Kilburn in this matter. As to cumulative failure in defense, this Court finds that claim to have no merit." (R. 12-4, at 35-36).

The Court's review of the record demonstrates that the Kentucky court did not unreasonably apply federal law in rejecting Kilburn's claim. At the evidentiary hearing, Kilburn testified that he caused the subject accident; moreover, Kilburn was unable to identify any specific alibi witnesses his trial counsel could have interviewed. Nor was Kilburn able to point to any alibi

theories counsel should have investigated, or any other facts to demonstrate his claim had merit. The Sixth Circuit has made clear that "there can be no constitutional deficiency" in failing to raise meritless arguments. *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999). Kilburn has wholly failed to offer any federal authority on point in support of his IAC claim, nor any argument demonstrating that the standard applied by the Kentucky courts was so unreasonable, so lacking in justification, that it resulted in an "extreme malfunction in the state criminal justice system" necessitating habeas corpus to disturb the Commonwealth's sovereign power. Accordingly, Kilburn has failed to meet his burden to show that the Kentucky court's adjudication of his IAC claim was objectively unreasonable, and his request for relief should be denied.

Moreover, based upon its review of the record, the Court further concludes that habeas relief is not merited on this claim, even under a de novo standard of review. An alibi is "[a] defense based on the physical impossibility of a defendant's guilt by placing the defendant in a location other than the scene of the crime at the relevant time." Alibi, Black's Law Dictionary (10th ed. 2014); *see also* Fed. R. Crim. P. 12.1. Petitioner offers no authority to support an assertion that trial counsel's failure to investigate an alibi was constitutionally deficient under the circumstances pursuant to the first *Strickland* prong, and such a claim is specious in light of the undisputed facts. There is no evidence on the record that Kilburn was in a location other than the scene of the crime at the time of the vehicle collision. To the contrary, Kilburn testified at the evidentiary hearing that he caused the accident by colliding with Joey Conn's vehicle. Nor was Kilburn able to point to any plausible alibi theory. While it is undisputed that Kilburn's counsel did not interview alibi witnesses, the decision of Kilburn's counsel "not to investigate further was not objectively unreasonable" under the circumstances. *Dows v. Wood*, 211 F.3d 480, 486 (9th Cir. 2000) (citing *Strickland*, 466 U.S. at 691 ("Counsel has a duty to make reasonable investigations or to make a reasonable decision that

makes particular investigations unnecessary.")).  It strains logic to assert that trial counsel's representation was constitutionally deficient for failing to investigate an alibi defense when Kilburn's presence at the scene was not in dispute.  Nor does Kilburn offer any support whatsoever to demonstrate that "but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  Accordingly, Kilburn's claim for relief should be denied.

Likewise, as to Kilburn's allegations of cumulative error, even under de novo review the Court finds that Kilburn has failed to establish that habeas relief is warranted under the circumstances.  When examining claims of ineffective assistance of counsel, a court must look to the totality of the circumstances surrounding alleged attorney error and not merely examine each error in isolation.  *Mackey v. Russell*, 148 F. App'x 355, 369 (6th Cir. 2005).  Nonetheless, when the individual claims of ineffectiveness alleged by a petitioner "are all essentially meritless, [the petitioner] cannot show that the cumulative error of his counsel rendered her ineffective."  *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000)*; see also Kotsonis v. United States*, 17-5099, 2017 WL 7310633, at *4 (6th Cir. Sept. 12, 2017); *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005). As set forth *supra*, each of the claims of ineffectiveness alleged by Kilburn is meritless; as a result, he is unable to demonstrate that the cumulative error of his trial counsel rendered her ineffective. *Seymour*, 224 F.3d at 557.

Moreover, after reviewing the complete record offered by the parties in this case, including the video recordings of trial proceedings, the Court finds that even considering the alleged errors cumulatively, Kilburn's claim would fail.  The Court cannot say that Petitioner's trial counsel's cumulative performance fell below an objective standard of reasonableness in this case. Petitioner's § 2254 Petition and testimony at the evidentiary hearing demonstrates that he disagrees

with the sentence he ultimately received. However, he fails to tie this dissatisfaction with his sentence to any deficiency in counsel's performance. The fact that a trial counsel's decisions can be disagreed with does not in itself indicate that counsel's performance was deficient. "The [petitioner's] burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Richter*, 562 U.S. at 104 (citing *Strickland*, 366 U.S. at 687). Notably, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* Here, reasonable minds can disagree about the best trial strategy, but Petitioner's trial counsel in this case investigated the evidence and advocated for her client to a satisfactory degree; Petitioner has not met his burden to show that counsel's errors were so serious that her representation fell short of the representation by "counsel" guaranteed defendants by the Sixth Amendment. *Richter*, 562 U.S. at 104. Furthermore, Kilburn failed to demonstrate a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. *Strickland*, 366 U.S. at 694. Accordingly, Petitioner's claim of ineffective assistance of counsel through cumulative error should be denied.

### C. Trial Court Errors

In addition to his ten IAC claims, Kilburn also asserts that he is entitled to habeas relief because the Supreme Court of Kentucky erred in affirming the trial court's rulings (1) denying defense counsel's motion for change of venue, (2) denying defense counsel's motion to strike two jurors, and (3) rejecting Kilburn's argument regarding double jeopardy. (R. 1-2, at 2). Kilburn admits that he did not raise these issues in his RCr 11.42 motion because they were all raised on direct appeal and rejected in the Kentucky Supreme Court. (R. 1, at 7-8).

1.    **Kilburn was not denied his right to a fair trial when the Kentucky court denied his motion for change of venue.**

Petitioner Kilburn alleges that the Supreme Court of Kentucky erred in affirming the ruling of the Floyd Circuit Court, which denied defense counsel's motion for change of venue in violation of Due Process under the Sixth Amendment to the U.S. Constitution. (R. 1, at 7). Kilburn asserts that "the publicity in this case tainted the entire jury pool and petitioner was denied a fair trial in Floyd County[.]" (*Id.*). In support of his claim that publicity tainted the entire jury pool, Kilburn points out that reports of the accident appeared "on the front page of local papers and television news channels—and website Topix[.]" (*Id.*). Kilburn contends that the reports are objectionable because they pointed out that one of the victims was a child, and also characterized Kilburn "as a habitual drunk[.]" (*Id.*).

On direct appeal, the Supreme Court of Kentucky rejected Kilburn's argument, finding that the pretrial publicity did not so arouse public opinion as to preclude a fair trial; likewise, without more, the fact that jurors may have heard, talked, or read about the case was insufficient to show Kilburn was prejudiced. (R. 12-4, at 10). The Kentucky Supreme Court then examined the Floyd Circuit Court's voir dire, which "revealed that knowledge about this case was not widespread throughout the community." (R. 12-4, at 11). Though some jurors did watch the local television news, none claimed to remember any specific reports on the case. Only two jurors responded to having read stories in the local newspaper. The Kentucky Supreme Court noted that "[a]fter inquiry from the trial court, neither juror [who had] admitted to reading stories about the case expressed that she could remember any of the specific facts of those articles or, more importantly, expressed that she would be unable to be fair and impartial and judge the case only on the presented facts." (*Id.*). Based upon these facts, the Supreme Court concluded that Kilburn failed to show that "a significant amount of the jury pool" was aware of the facts of the case; nor did Kilburn

54

show "that any juror expressed an opinion as to his guilt before trial. In fact, the record shows the opposite." (R. 12-4, at 12). Without more, the mere fact that the accident received media coverage failed to demonstrate that "extreme prejudice existed in the community." (R. 12-4, at 12). The Kentucky Supreme Court concluded that the trial court did not abuse its discretion in denying Kilburn's change of venue motion, as "[t]he totality of the circumstances does not show a 'reasonable likelihood' that Kilburn would not receive a fair trial." (*Id.*) (citing *Sheppard v. Maxwell*, 384 U.S. 333, 363 (1966)).

The Sixth Circuit has explained the established federal law on this issue, stating that a trial court should grant the defendant a change in venue only if "pretrial publicity jeopardizes a defendant's right to a fair trial by an impartial jury." *Foley v. Parker*, 488 F.3d 377, 387 (6th Cir. 2007) (citing *Irvin v. Dowd*, 366 U.S. 717, 722-24 (1961); *Ritchie v. Rogers*, 313 F.3d 948, 956 (6th Cir. 2002)). Prejudice resulting from pretrial publicity can be presumptive or actual. *Foley*, 488 F.3d at 387. Presumptive prejudice from pretrial publicity occurs when an inflammatory, circus-like atmosphere pervades both the courthouse and the surrounding community; prejudice from pretrial publicity "is rarely presumed." *Id.* Where pretrial publicity cannot be presumed prejudicial, the trial court must then determine whether it rises to the level of actual prejudice. *Id.* The primary tool for discerning actual prejudice is a searching voir dire of prospective jurors. The court must review the media coverage and the substance of the jurors' statements at voir dire to determine whether a community-wide sentiment exists against the defendant. Negative media coverage by itself is insufficient to establish actual prejudice, and the existence of a juror's preconceived notion as to the guilt or innocence of the defendant, without more, is not sufficient to rebut the presumption of impartiality. *Id.* The juror must be able to lay aside his or her impressions or opinions and render a verdict based upon the evidence presented in court. *Id.* The

55

relevant question is "did the juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed."  *Id.* (citing *Patton v. Yount*, 467 U.S. 1025, 1036 (1984)).

The U.S. Supreme Court has explained that jury selection is "particularly within the province of the trial judge," and deference should be given to the trial court's determinations as it relates to the pervasiveness of media exposure because the judge sits in the locality where the publicity is said to have effect.  *Mu'Min v. Virginia*, 500 U.S. 415 (2011); *see also Skilling v. United States*, 561 U.S. 358, 386 (2010) ("Appellate courts making after-the-fact assessments of the media's impact on jurors should be mindful that their judgments lack the on-the-spot comprehension of the situation possessed by trial judges."); *Jackson v. Houk*, 687 F.3d 723, 733 (6th Cir. 2012) (rejecting habeas claim when the state trial judge questioned jurors during voir dire and all of the jurors who were accepted on the jury by the trial court stated "that they could render a fair and unbiased verdict without regard to their knowledge of the case arising from the extensive pretrial publicity.").

Habeas relief is inappropriate under these circumstances, as Kilburn has failed to satisfy his burden to show that the Supreme Court of Kentucky's adjudication of this issue was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of facts in light of the evidence presented in the state court proceeding. Rather, the record shows that the Supreme Court of Kentucky reasonably identified and implemented federal precedent in finding that "[t]he totality of the circumstances does not show a 'reasonable likelihood' that Kilburn would not receive a fair trial."  (R. 12-4, at 11-12).

Specifically, the state court's determination that prejudice could not be presumed was reasonable.  There is no evidence that a few news publications or discussion of the accident at the

church of the victim, Joey Conn, amounted to a community-wide, "circus-like atmosphere" which "pervade[d] both the courthouse and the surrounding community" such that prejudice could be presumed. *Foley*, 488 F.3d at 387. *See also Ritchie*, 313 F.3d at 956 (prejudice not presumed even though the murder of petitioner's daughter was the "Number 1" local news story for the calendar year). Rather, most of the jurors were not aware of any news coverage. Furthermore, the state court's determination that there was no actual prejudice was also reasonable. The record shows that the trial court specifically questioned jurors regarding their exposure to media coverage and confirmed with jurors who had heard of the case that they were able to be fair and impartial and assess the case only on the presented facts.

As discussed above, in order for a state court's application of law to be unreasonable, it must be more than merely erroneous or incorrect, it must be objectively unreasonable. *Wiggins*, 539 U.S. at 520. Kilburn has not met his burden and has not shown that the Kentucky court's adjudication of the venue issue was an unreasonable application of established federal law. Nor has Kilburn pointed to any authority demonstrating that the decision of the Kentucky Supreme Court on this issue was contrary to federal law. The Kentucky Supreme Court properly reviewed Kilburn's claims as to venue under the prevailing federal standard, and it reasonably concluded that trial could appropriately proceed in Floyd Circuit Court. Accordingly, Kilburn's request for relief should be denied.

### 2.    Kilburn was not denied his right to be tried by an impartial jury when the trial court failed to strike two jurors for cause.

Petitioner Kilburn alleges that the Supreme Court of Kentucky erred in affirming the ruling of the Floyd Circuit Court, which denied defense counsel's request to strike two jurors for cause in violation of Due Process under the Sixth Amendment to the U.S. Constitution. (R. 1, at 8). Kilburn asserts that as a result, he was forced to exhaust his peremptory challenges to remove those

57

jurors and, as a result, another juror whom he would have used the remaining peremptory challenges to strike was seated on the jury. *Id.*

On direct appeal, the Supreme Court of Kentucky rejected Kilburn's argument largely based upon Kentucky precedent and RCr 9.36. (*See* R. 12-4, at 13-14). The Supreme Court of Kentucky also cited U.S. Supreme Court precedent in noting that "[t]here is no 'magic question' that can rehabilitate a juror as impartiality is not a technical question but a state of mind." (R. 12-4, at 13) (citing *United States v. Wood*, 299 U.S. 123, 57 (1936)). Central to the Kentucky Supreme Court's decision that the trial court's finding was proper, the record showed that the trial court specifically questioned the two jurors as to their media exposure, and each juror confirmed to the trial court that she could set this aside and only make a decision based on the evidence of the case. (*See* R. 12-4, at 13). Based on the totality of the circumstances, the Supreme Court of Kentucky determined that "[n]either juror had sufficient knowledge of the case to require disqualification" and there was not reasonable ground to believe that the jurors were unable to render a fair and impartial verdict on the evidence. (*Id.* at 13-14).

The Sixth Amendment, made applicable to the Commonwealth of Kentucky through the Fourteenth Amendment, guarantees a criminal defendant a trial by an impartial jury, and "[t]he presence of even a single biased juror deprives a defendant of his right to an impartial jury." *Williams v. Bagley*, 380 F.3d 932, 943 (6th Cir. 2004) (internal citations omitted). "Qualified jurors need not, however, be totally ignorant of the facts and issues involved." *Id.* (citing *Murphy v. Florida*, 421 U.S. 794, 799-800 (1975)). Rather, "[i]t is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Williams*, 380 F.3d at 944 (citing *Irvin v. Dowd*, 366 U.S. 717, 722 (1961)). When faced with an allegation of bias, "the question becomes 'did a juror swear that he could set aside any opinion he might hold

and decide the case on the evidence, and should the juror's protestation of impartiality have been believed.'" *Williams*, 380 F.3d at 944 (citing *Patton v. Young*, 467 U.S. 1025, 1036 (1984)).  A trial court's finding of impartiality is a factual determination entitled to 28 U.S.C. § 2254(e)'s presumption of correctness . . . and may be overturned only for manifest error." *Williams*, 380 F.3d at 944 (internal citations omitted).

Here, the Supreme Court of Kentucky's determination was reasonable.  That the Kentucky Supreme Court relied on a state rule of procedure, RCr 9.36, as well as various state cases in reaching its determination does not affect this Court's review under the deference of the AEDPA. A state court need not cite, or even be aware of, U.S. Supreme Court precedent, so long as "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).  The Supreme Court of Kentucky correctly set forth the standard to apply in reviewing a trial court's ruling on a juror's impartiality, pointing to the trial court's specific questioning of each juror's ability to make a determination based only upon the evidence presented at trial.

Petitioner does not substantively challenge the trial court's factual findings at all; his claim is solely based upon the jurors' exposure to media reports.  Without more, Kilburn's claim is insufficient to rebut the presumption of the jurors' impartiality; it is sufficient that the jurors could lay aside any pre-conceived impressions and render a verdict based on the evidence presented in court.  *Irvin*, 366 U.S. at 723.  Kilburn has wholly failed to set forth any facts or authority to demonstrate that the jurors' statements to the trial court that they could make a determination based solely on the evidence at trial should not have been believed.  Accordingly, the Supreme Court of Kentucky's decision was not contrary to clearly established federal law as determined by the U.S. Supreme Court, nor was it objectively unreasonable such that "there was an error well understood

and comprehended in existing law beyond any possibility for fairminded disagreement." *Thurmond v. Carlton*, 489 F. App'x 834, 836-37 (6th Cir. 2012) (internal citations omitted). Accordingly, Kilburn's request for relief should be denied.

### 3. Kilburn was not placed in double jeopardy in violation of the Fifth Amendment.

Kilburn's final argument is that the Kentucky Supreme Court erred in rejecting his argument that being convicted of both the offense of First Degree Assault (KRS § 508.010) and Operating a Motor Vehicle with an Alcohol Concentration Over 0.08 (KRS § 189A.010) violated the constitutional protection against double jeopardy pursuant to the Fifth Amendment to the U.S. Constitution. (R. 1, at 10). Kilburn claims that double jeopardy is invoked because both offenses require proof that he caused serious physical injury either intentionally or wantonly. As with each of the 13 bases for relief set forth in his § 2254 Petition, Kilburn makes no specific legal argument beyond the mere allegation.

The Supreme Court of Kentucky rejected Kilburn's argument on direct appeal. (*See* R. 12-4, at 17). The Supreme Court of Kentucky utilized the test set forth by the U.S. Supreme Court in *Blockburger v. United States*, 284 U.S. 299 (1932), which held that "[d]ouble jeopardy does not occur when a person is charged with two crimes arising from the same course of conduct, as long as each statute requires proof of an additional fact which the other does not." (*See* R. 12-4, at 17). Applying the *Blockburger* test, the Supreme Court of Kentucky then looked to the statutory elements of both offenses and found that "[e]ach of Kilburn's crimes requires proof of separate elements." (R. 12-4, at 18). Specifically, the Supreme Court of Kentucky found that First Degree Assault under KRS § 508.010 does not require proof that the defendant was intoxicated, while the offense of driving while intoxicated under KRS § 189A.010 does. (R. 12-4, at 18). Likewise, the latter offense, unlike the offense of First Degree Assault, "requires proof that the defendant was in

60

physical control of a motor vehicle while intoxicated, but calls for no proof of injury to another." (R. 12-4, at 18).

Habeas relief is inappropriate under these circumstances, as Kilburn has failed to satisfy his burden to show that the Supreme Court of Kentucky's adjudication of this issue was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of facts in light of the evidence presented in the state court proceeding. Rather, the record shows that the Supreme Court of Kentucky reasonably identified and implemented federal precedent in finding that, under *Blockburger,* KRS § 508.010 and KRS § 189A.010 each requires proof of an additional fact which the other does not. (R. 12-4, at 18). Other than his bare assertion of double jeopardy, Kilburn has wholly failed to set forth any facts, argument, or authority in support of his position, which is legally unsound and unsupported by the record. Accordingly, Kilburn's request for relief should be denied.

In sum, as discussed *supra,* Kilburn raises a number of challenges to the Kentucky courts' evaluation of his trial and his trial counsel's conduct. However, Kilburn has failed to establish that the Kentucky courts' determinations were contrary to, or resulted from an objectively unreasonable application of, clearly established federal law. As the U.S. Supreme Court acknowledged, "this is a difficult-to-meet, and highly deferential, standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal citations omitted). Although Kilburn may disagree with the Kentucky courts' analyses, the writ of habeas corpus is intended to cure only serious constitutional errors, and "[f]ederal courts are not forums in which to relitigate state trials." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). The case at bar does not present a circumstance where the Kentucky courts' rulings were so lacking in justification that habeas corpus is required to disturb the

Commonwealth's sovereign power in order to "guard against extreme malfunctions in the state criminal justice system." *See Harrington v. Richter*, 562 U.S. 86, 103 (2011). Accordingly, it will be recommended that Petitioner Kilburn's claims under 28 U.S.C. § 2254 be denied in their entirety.

### D.    Appointment of Counsel

Petitioner Kilburn has failed to show that justice requires the appointment of counsel in the instant proceedings. The Criminal Justice Act, 18 U.S.C. § 3006A *et seq.*, governs appointment of counsel in the context of habeas proceedings initiated pursuant to 28 U.S.C. § 2254. *See* 18 U.S.C. § 3006A(a)(2)(B) ("Whenever the United States magistrate judge or the court determines that the interests of justice so require, representation may be provided for any financially eligible person who . . . is seeking relief under section 2241, 2254, or 2255 of title 28."). As indicated by the permissive language of the statute, no constitutional right to counsel exists in a habeas proceeding. *See Post v. Bradshaw*, 422 F.3d 419, 423 n.1 (6th Cir. 2005) (recognizing that a petitioner has no right to counsel in a habeas proceeding). Accordingly, the decision to appoint counsel in this context is solely within the discretion of the Court, and should be granted only if justice so requires. *See United States v. Thornton*, 06-459, 2007 WL 1741780, at *1 n.1 (E.D. Ky. May 25, 2007).

Upon review of the record and Petitioner's submissions, the Court finds that Petitioner has failed to demonstrate that justice requires appointment of counsel in the instant proceedings. Petitioner does not set forth any specific facts or argument in support of his claim that he is entitled to counsel, nor does he aver that this action presents any unusual complexities, problems, or conflicts requiring appointment of counsel. Moreover, as set forth above, Petitioner's claims simply lack merit. Because Petitioner has failed to demonstrate that justice requires appointment

of counsel and because his claims in support of his § 2254 Petition are meritless, the undersigned recommends that the presiding District Judge deny Petitioner Kilburn's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (R. 1) and incorporated Motion for Appointment of Counsel.

### E.    Evidentiary Hearing

Finally, it will be recommended that Kilburn's request for an evidentiary hearing be denied. A habeas litigant in federal court is entitled to a federal evidentiary hearing on his claims where (1) he alleges sufficient grounds for release, (2) relevant facts are in dispute, and (3) the state courts did not hold a full and fair evidentiary hearing. *Sawyer v. Hofbauer*, 299 F.3d 605, 610-11 (6th Cir. 2002). First, Kilburn has failed to allege sufficient grounds for release; as delineated *supra*, the record in this case conclusively shows that Kilburn is not entitled to relief. Furthermore, Kilburn has failed to demonstrate that relevant facts are in dispute. Other than his own conclusory statements, Kilburn has not identified any additional evidence he could present at an evidentiary hearing.

Finally, the record shows that the state courts held a full and fair evidentiary hearing where Kilburn was represented by counsel and afforded an opportunity to present evidence and testimony on his behalf. Kilburn argues that the evidentiary hearing held by the Floyd Circuit Court on his RCr 11.42 motion was inadequate, "as the Trial Court never actually considered Appellant's issues and only made a cursory ruling on the merits[.]" (R. 12-4, at 47). Kilburn characterized the evidentiary hearing as "only a means for the State to play on Appellant's intelligence and lack of enough skills to speak before the courts. Appellant felt he was 'no more than a field mouse being played with by cats,' as he could not speak for himself, and Counsel provided no help other than to be present." (*Id.*). The Court's review of the record, including video recordings of the entire

evidentiary hearing proceedings, demonstrates that Kilburn's argument is unfounded. The proceedings were extensive and involved testimony of two witnesses as well as argument by counsel. Kilburn's appointed counsel made objections during the Commonwealth's cross-examination of witnesses, and sought additional bases of relief pursuant to Kentucky Civil Rule 60.02(f) and 60.03. Moreover, Kilburn was given more than an adequate opportunity to speak for himself. Counsel asked open-ended questions, and the Court provided additional opportunities for Kilburn to set forth testimony in support of his claims and to submit additional briefing prior to the Floyd Circuit Court's ruling. Kilburn has failed to demonstrate that he was denied a full and fair evidentiary hearing. For these reasons, Kilburn's request for an evidentiary hearing should be denied.

## III. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Proceedings, the district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant. A certificate may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*. "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a

constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists would not debate the denial of Petitioner's § 2254 Petition or conclude that the issues presented are adequate to deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it will be recommended that a certificate of appealability **be denied** upon the District Court's entry of its final order in this matter.

## IV.    CONCLUSION AND RECOMMENDATION

For the reasons stated herein, **IT IS RECOMMENDED** that:

1)    Petitioner's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254, including his request for counsel and request for an evidentiary hearing (R. 1), **be denied** and this matter **be dismissed;**

2)    a Certificate of Appealability **be denied** by the District Court in conjunction with the Court's entry of its final order in this matter;

3)    Judgment in favor of the Respondent **be entered** contemporaneously with the District Court's entry of its final order; and

4)    this case **be stricken** from the active docket of this Court.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (B) of the statute. *See also* Rules Governing Section 2254 Proceedings for the United States District Courts, Rule 8(b). Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Court. Failure to make a timely objection consistent with

the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn,* 474 U.S. 140, 155 (1985); *United States v. Walters,* 638 F.2d 947, 950 (6th Cir. 1981).

Dated this 22nd day of April, 2019.



**Signed By:**

*Candace J. Smith*

**United States Magistrate Judge**

J:\DATA\habeas petitions\2254 General\17-139-DCR Kilburn R&R final.mbdmng.docx